■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM SACHS, Appellant.—Judgment of the Supreme Court, New York County (Richard Andrias, J., at trial with a jury), rendered on or about July 19, 1988, convicting defendant of bribe receiving in the third degree, and sentencing him to a definite term of imprisonment of six months and a fine of $2,000, unanimously affirmed, and the matter remitted to Supreme Court for proceedings pursuant to CPL 460.50 (5).

Defendant's claim that his guilt was not established beyond a reasonable doubt is without merit. In his brief submitted on this appeal, defendant admits that his actions were "inexcusably insensitive and unwise" but maintains that he acted in the capacity of "a private consultant selling his experience and knowledge, not as a bribe-seeking city *[sic]* employee". However, the transcript of a conversation between defendant and an undercover police officer, which was recorded using a miniature tape recorder concealed on the officer's person, reveals that defendant promised that certain building permits would be obtained in exchange for the payment to him of $5,000, with another $15,000 to be paid to an architect who would draw up any necessary plans. Defendant clearly represented that his position as a senior plans examiner with the New York City Buildings Department would be used to guarantee that the necessary permits would be forthcoming. At one point, the following exchange took place between defendant, designated "WS" in the transcript, and the undercover officer:

"WS: I think that the way you're approaching us is that you're making it easier for us and you're making it easier for yourself.

"UNDER: That's, that's, that's the name of the game.

"WS: And you're doing whatever you want, and you're gonna get * * * it's the sign-offs and the approvals."
Towards the end of the conversation, on the question of payment, defendant stated, "Let me put it this way, for what I'm going to be involved in to get the whole thing moving and prepare the paper work, where ever *[sic]* I can and to get all the drawings, all the records at the department into their

hands and help the architect fill out all the papers and the notes and this and that. Uh, I would say five." The undercover officer paid defendant an advance of $1,000, of which defendant was still carrying $900 when arrested the following afternoon.

Defendant contends that certain questions addressed to the undercover officer by the prosecutor regarding the substance of the officer's conversation with defendant were improper and, taken together with other alleged errors, deprived him of a fair trial. The questions concerned the officer's understanding of the agreement reached with defendant which, defendant asserts, amounts to an invasion of the province of the jury to determine the ultimate issue in the case. As his own brief points out, "the test of admissibility of such evidence is whether, given the nature of the subject, no better evidence is available" (citing *People v Cronin,* 60 NY2d 430, 432-433). It is defendant's contention that the tape recording itself is the best evidence of what transpired. What this argument disregards, however, are the numerous periods during which the transcript reflects that the tape is inaudible, at times during crucial points in the discussion. Clearly, the officer was an appropriate witness from whom to elicit a synopsis of the conversation to which he was a party, a conversation which is otherwise unavailable in its entirety. Moreover, defense counsel objected to the undercover officer's testimony on the ground that he was conveying an expert opinion only once, upon redirect examination, and at that time the court clearly instructed the jury that the significance to be ascribed to any agreement between the undercover officer and defendant was ultimately a determination which was theirs alone to make.

Defendant also maintains that a reference to conflict of interest laws during the prosecutor's summation misled the jury as to the law applicable to the case. The court, however, immediately gave curative instructions that the crime charged was bribe receiving, directed that the reference to conflict of interest be disregarded, and correctly instructed the jury on the applicable law prior to their deliberations.

Defendant further argues that the court's instruction that no inference be drawn from his failure to testify went beyond the bounds of the statute (CPL 300.10 [2]). No objection was raised to the instruction during trial, however, and it is therefore unpreserved for appellate review *(People v Autry,* 75 NY2d 836).

Defendant's suggestion that the jury verdict was against the weight of the evidence (CPL 470.15 [5]) is entirely without

merit. When viewed in a light most favorable to the prosecution *(People v Contes,* 60 NY2d 620) the evidence is legally sufficient to establish, beyond a reasonable doubt, that defendant accepted a bribe upon the understanding that his actions as a public servant would thereby be influenced *(People v Charles,* 61 NY2d 321, 325-326).

Finally, we do not regard the sentence imposed as unduly harsh. Taking into account, "among other things, the crime charged, the particular circumstances of the individual before the court and the purpose of a penal sanction", we perceive no abuse of discretion warranting a reduction in sentence *(People v Farrar,* 52 NY2d 302, 305). Concur—Rosenberger, J. P., Kassal, Ellerin, Smith and Rubin, JJ.