**THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SUZANNE T. VIZZINI, Appellant.**

Fourth Department, November 18, 1992

**APPEARANCES OF COUNSEL**

*Linda S. Reynolds,* Buffalo *(Carolyn Balowitz* of counsel), for appellant.

*Carol Antonacci, Special Prosecutor,* White Plains *(Steven Chananie* of counsel), for respondent.

**OPINION OF THE COURT**

GREEN, J.

■ The principal issue presented on this appeal is whether the trial court properly permitted a lay witness to testify concerning the hidden meaning of certain words and phrases

used by defendants in electronically intercepted conversations. We conclude that lay opinion testimony was improperly received.

The multicount indictment against these five defendants resulted from an extensive investigation by the New York State Organized Crime Task Force (OCTF) into cocaine trafficking in the Buffalo area. Based upon information obtained largely through court-authorized electronic surveillance, the OCTF determined that defendant Joel Vizzini, Sr. (Vizzini) was distributing cocaine from his residence on Delaware Avenue. Among Vizzini's numerous customers were an OCTF investigator and Vizzini's cousin, Thomas Vizzini.

During the course of the investigation, Vizzini made three trips to Los Angeles. Defendant John Battaglia, a California resident, was believed to be Vizzini's chief cocaine supplier. After Vizzini returned from his third trip to Los Angeles, a warrant was obtained to search his apartment. When the warrant was executed, the OCTF seized approximately 1½ kilograms of cocaine.

At trial the People maintained that Vizzini and Battaglia played the major parts in a conspiracy to import cocaine from Los Angeles for distribution in Buffalo. The People also sought to establish that supporting roles in the conspiracy were undertaken by Vizzini's wife and son, defendants Suzanne Vizzini and Joel Vizzini, Jr., and by defendant Patrick Granger, Battaglia's son-in-law and Vizzini's attorney.

To prove the existence of a conspiracy among the defendants, the People relied upon tape recordings of 156 telephone conversations, selected from approximately 4,000 conversations intercepted during the course of the OCTF investigation. The conversations, however, were not simply replayed for the jury. After an extensive offer of proof and over defendants' objections, the trial court permitted the People to present extensive testimony concerning the "hidden" meaning of certain words and phrases. The court had determined that defendants' conversations contained a number of guarded and cryptic references that were unlikely to be understood by the jury. Relying on our decision in *People v Portanova* (56 AD2d 265), the Trial Judge allowed the People to present lay opinion to interpret and explain the words chosen by defendants.

We conclude that the permissible scope of opinion testimony, as outlined in *Portanova (supra)*, does not encompass the testimony of the OCTF investigator. In *Portanova,* the

witness had seven years experience as an undercover narcotics investigator. In light of his particular expertise, we concluded that it was proper to receive the investigator's testimony concerning the meaning of five words spoken in taped telephone conversations.

The experience of the investigator in the instant case clearly did not reach the level of the experience of the witness in *Portanova (supra)*. Recognizing that the investigator possessed no expertise related to narcotics dealing, the People made no attempt to qualify him as an expert witness. The only specialized narcotics training he received was a two-week course conducted by the Drug Enforcement Administration. At the time the Vizzini investigation began, he was involved in only one or two other drug investigations. He had never before testified at a drug trial.

The OCTF investigator's lack of relevant experience distinguishes the present case from *Portanova (supra)* and from a growing line of Federal and State authorities recognizing that a properly qualified expert witness may testify concerning the meaning of narcotics code and jargon *(see, United States v Campino*, 890 F2d 588, 592-593, *cert denied* — US —, 111 S Ct 179; *United States v Tutino*, 883 F2d 1125, 1133-1134, *cert denied* 493 US 1081; *United States v Carmona*, 858 F2d 66, 69; *United States v Kusek*, 844 F2d 942, 949, *cert denied* 488 US 860; *United States v Nersesian*, 824 F2d 1294, 1307-1309, *cert denied* 484 US 958; *People v White*, 184 AD2d 798; *People v Miranda*, 179 AD2d 391, *lv denied* 79 NY2d 1004; *People v Hinton*, 178 AD2d 279, *lv denied* 79 NY2d 948; *see also, People v Sherrod*, 181 AD2d 700, *lv denied* 79 NY2d 1054; *People v Roman*, 171 AD2d 562, *lv denied* 77 NY2d 1000; *People v Polanco*, 169 AD2d 551, *lv denied* 77 NY2d 965; *see generally,* Annotation, *Admissibility of Expert Evidence Concerning Meaning of Narcotics Code Language in Federal Prosecution for Narcotics Dealing—Modern Cases,* 104 ALR Fed 230). Expert testimony may be properly received in certain cases because the guarded and often cryptic language employed by narcotics dealers to camouflage their activities will frequently be beyond the knowledge and experience of the average juror *(see, People v Cronin*, 60 NY2d 430).

The People contend that, despite the investigator's admitted lack of narcotics-related education or experience, his extensive involvement with the Vizzini investigation sufficiently qualified him to ascribe meaning to the intercepted conversations.

As the OCTF's "team analyst", he listened to all 4,000 recorded conversations, analyzed and prepared synopses of 1,800 of them, and intensively studied the 156 conversations actually received in evidence. He was also involved in visual surveillance and participated in the execution of the search warrant at the Vizzini residence.

We do not believe that the investigator's intimate involvement in the Vizzini investigation compensates for his lack of formal training and practical experience. Despite his extensive participation, he was unable to offer sufficiently reliable interpretations of defendants' words. Unlike the typical situation calling for an expert to translate narcotics code or jargon *(see, e.g., People v Portanova, supra)*, the OCTF investigator was asked to interpret words and phrases not typically used by drug dealers. Although he claimed to have identified certain "key words" used by defendants, he was unable to ascribe any fixed, constant meaning to the words. Each conversation was analyzed and interpreted separately. He testified, for example, that the word "that" meant cocaine in a particular conversation, while "presents" meant cocaine in another conversation. "That job" and "work" referred to both Vizzini's trips to Los Angeles to procure cocaine and to the transportation of cocaine from California to Buffalo. The investigator did not break a drug code or translate a private language spoken by the defendants. Rather, he presented only his impressions and understandings of each discrete ambiguous word or phrase, which might differ from conversation to conversation.

The People contend that, apart from the question of the investigator's expertise, his testimony was properly admitted under an alternative rationale contained in *Portanova (supra)*. In holding that the opinion testimony was properly received in *Portanova*, we did not refer only to the investigator's extensive undercover narcotics experience. Rather, we also cited "the general rule that lay witnesses can testify as to the meaning of statements and that when words have a doubtful, hidden or ambiguous meaning, the person who used them may testify as to their meaning, as may all persons who heard them *(People v Irvine,* 40 AD2d 560)" *(People v Portanova,* 56 AD2d 265, 272, *supra).*

It is important to note that *Portanova's (supra)* broad statement of the general rule is dictum. Unlike the investigator in the present case, the witness in *Portanova* had been properly qualified as an expert and offered expert opinion. Further, we do not believe that the phrase, "all persons who

heard them," should apply generally to eavesdroppers. Absent special expertise or experience, the person who surreptitiously overhears a conversation is not able to offer reliable interpretations of the vague or cryptic language chosen by the participants in the conversation. Rather, in appropriate circumstances, the participants themselves may be properly permitted to testify concerning the meaning of the words used *(see, People v Lozado,* 180 AD2d 410; *People v Sachs,* 162 AD2d 125, 126, *lv denied* 76 NY2d 795, *appeal dismissed* 77 NY2d 881, cert denied — US —, 111 S Ct 2854; *United States v Aiello,* 864 F2d 257, 265; *United States v Phillips,* 593 F2d 553, 558, *cert denied* 466 US 971; *see generally,* Annotation, *Construction and Application of Rule 701 of Federal Rules of Evidence, Providing for Opinion Testimony by Lay Witnesses Under Certain Circumstances,* 44 ALR Fed 919, § 3). The parties to a communication, unlike eavesdroppers, are in a position to explain their understanding of the language chosen by and directed to them.

■ Permitting this OCTF investigator to offer extensive interpretations of defendants' conversations constituted an invasion of the jury's exclusive province of determining ultimate factual issues *(see, People v White,* 184 AD2d 798, *supra; People v Goodwine,* 177 AD2d 708, *lv denied* 79 NY2d 920; *People v Falzone,* 150 AD2d 249, 251, *lv denied* 74 NY2d 739). Therefore, defendants' convictions of conspiracy in the second degree should be reversed and the sentences imposed thereon vacated. Because the only evidence supporting the convictions of defendants Granger and Suzanne Vizzini was the improperly admitted lay opinion testimony, the indictment should be dismissed against them *(see,* CPL 470.20 [2]). With regard to Battaglia, Vizzini and Joel Vizzini, Jr., we conclude that there was sufficient admissible evidence of a conspiracy, and a new trial should be granted on the first count of the indictment. Battaglia should also be granted a new trial on the 13th count, charging him with criminal possession of a controlled substance in the first degree.

■ We further conclude, as a separate ground for reversal of the conspiracy convictions, that the trial court erred in permitting the jury, during its deliberations, to examine the log books summarizing the intercepted conversations, including hundreds that had never been introduced into evidence. The logs were received in evidence solely for the purpose of providing a foundation for the tape recordings. The trial court's

compliance with the jury's request to examine the logs arose from its mistaken belief that the logs were admitted unconditionally and that it lacked discretion to deny the request *(see,* CPL 310.20 [1]). The log books contain irrelevant and highly prejudicial material that should not have been subject to inspection by the deliberating jury.

The errors in receiving the logs and in permitting the OCTF investigator's lay opinion testimony do not require reversal of Vizzini's convictions for criminal possession of a controlled substance in the first degree *(see,* Penal Law § 220.21) and two counts of criminal sale of a controlled substance in the third degree *(see,* Penal Law § 220.39). The evidence supporting those three convictions is wholly independent of the inadmissible evidence relating to the telephone conversations. The possession count was established by evidence that a kilo and a half of cocaine was seized from his apartment. The testimony of Thomas Vizzini and an OCTF Officer, that Vizzini had sold cocaine to each of them, supports Vizzini's conviction of the two sale counts. Therefore, Vizzini's sale and possession convictions should be affirmed on the ground that those convictions were neither dependent upon nor tainted by the investigator's impermissible opinion testimony or the improper submission of the logs to the deliberating jury.

Viewing the evidence in the light most favorable to the People *(see, People v Contes,* 60 NY2d 620, 621), we conclude that the proof was sufficient to support Vizzini's convictions for criminal possession of a controlled substance in the first degree and two counts of criminal sale of a controlled substance in the third degree. We further conclude that the jury's verdict is not contrary to the weight of the evidence. We have examined Vizzini's other contentions and find that they do not warrant reversal of his conviction for those three counts.

Additionally, we conclude that defendants' remaining contentions are lacking in merit. The trial court properly denied defendants' requests to submit the lesser included offenses of conspiracy in the fourth, fifth and sixth degrees to the jury *(see, People v Glover,* 57 NY2d 61). We perceive no error in the trial court's refusal to direct the prosecutor to enhance his opening statement, which satisfied the requirement of CPL 260.30 (3) *(see, People v Kurtz,* 51 NY2d 380, 384, *cert denied* 451 US 911). The trial court's instructions to the jury were proper. The denial of defendants' motions for severance constituted a proper exercise of the court's discretion *(see,* CPL

200.40 [1]; *People v Mahboubian,* 74 NY2d 174, 183). There was nothing improper in the trial court's manner of determining that a prima facie case of conspiracy had been established *(see, People v A-1 Carting Co.,* 158 AD2d 693, 694, *lv denied* 75 NY2d 963).

We also reject defendants' challenges to the court's pretrial rulings. The court properly denied defendants' motions to suppress evidence obtained by means of the eavesdropping warrants. The warrant was properly issued upon a finding of probable cause *(see,* CPL 700.15; *People v Tambe,* 71 NY2d 492, 500); the People established the unavailability of alternative investigative procedures *(see,* CPL 700.15 [4]; *People v Candella,* 171 AD2d 329, 332); the People demonstrated that minimization procedures were established and followed (see, CPL 700.30 [7]; *People v Floyd,* 41 NY2d 245, 250); and there was no violation of the requirements of CPL 700.70 *(see, People v Liberatore,* 79 NY2d 208). Thus, we conclude that defendants' motion to suppress evidence seized from Vizzini's apartment upon execution of the search warrant was properly denied.

Finally, we reject defendants' contentions that the jury's verdict is contrary to the weight of the evidence *(see, People v Bleakley,* 69 NY2d 490) and that the sentences imposed are harsh and excessive.

CALLAHAN, J. P., BALIO, FALLON and DAVIS, JJ., concur.

Judgment unanimously reversed, on the law, and indictment dismissed.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOEL S. VIZZINI, JR., Appellant.—Judgment unanimously reversed, on the law, and new trial granted on count one of the indictment. Same opinion as in *People v Vizzini (Suzanne)* (183 AD2d 302 [decided herewith]). Present—CALLAHAN, J. P., GREEN, BALIO, FALLON and DAVIS, JJ.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOEL S. VIZZINI, SR., Appellant.—Judgment unanimously modified on the law, and as modified, affirmed, and new trial granted on count one of the indictment in accordance with same opinion as in *People v Vizzini (Suzanne)* (183 AD2d 302 [decided herewith]). Present—CALLAHAN, J. P., GREEN, BALIO, FALLON and DAVIS, JJ.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PATRICK E. GRANGER, Appellant.—Judgment unanimously reversed, on the law, and indictment dismissed. Same opinion as

in *People v Vizzini (Suzanne)* (183 AD2d 302 [decided herewith]).
Present—CALLAHAN, J. P., GREEN, BALIO, FALLON and DAVIS,
JJ.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
JOHN J. BATTAGLIA, Appellant.—Judgment unanimously re-
versed, on the law, and new trial granted on counts 1 and 13
of the indictment. Same opinion as in *People v Vizzini (Su-
zanne)* (183 AD2d 302 [decided herewith]). Present—CALLAHAN,
J. P., GREEN, BALIO, FALLON and DAVIS, JJ.