THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANK CASSADEI, Also Known as BOCKY, Appellant. (Action No. 1.)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THOMAS CAIAZZO, Appellant. (Action No. 2.)

Third Department, January 31, 1991

## APPEARANCES OF COUNSEL

*Kouray & Kouray (Steven X. Kouray* of counsel), for appellants.

*Ronald Goldstock (Carol Antonacci* and *Steven Chananie* of counsel), for respondent.

## OPINION OF THE COURT

LEVINE, J.

These companion cases arose out of (1) a 1986-1987 investigation by the State Organized Crime Task Force (hereinafter OCTF) of illegal gambling in Schenectady County, centering on a multilocation operation allegedly directed by defendant Frank Cassadei, notwithstanding the fact that he was then incarcerated in Mount McGregor Correctional Facility in Saratoga County (hereinafter the facility), and (2) an initially independent investigation by the Police Department of the Town of Colonie, Albany County, into suspected interstate money-laundering of gambling profits and transmission of gambling records by defendant Thomas Caiazzo originating from the premises located at 952 Crane Street in the City of Schenectady and sent to other States through the Federal Express office in Colonie.

The OCTF investigation consisted of physical surveillance, undercover police work and electronic surveillance for three months by means of clandestinely placed listening devices, or "bugs", at two locations, the visitor's center at the facility during Cassadei's meetings with various alleged confederates, and the premises known as Curley's Luncheonette at 578 Broadway in Schenectady.

Following the handing up of indictments charging each defendant with conspiracy, various counts of promoting gambling in the first degree and possession of gambling records in the first degree, they moved to suppress evidence obtained

through the electronic surveillance. Additionally, Caiazzo moved to suppress evidence obtained by the Colonie Police Department pursuant to search warrants issued for the search of packages sent via Federal Express from or to 952 Crane Street in Schenectady and then in the possession of the Federal Express office in Colonie. When County Court denied all such motions, each defendant pleaded guilty to one count of promoting gambling in the first degree and received an indeterminate sentence of imprisonment of 1½ to 3 years. These appeals followed.

Defendants' arguments on appeal regarding suppression of the eavesdropping evidence are virtually identical. An initial 30-day eavesdropping warrant was granted November 3, 1986. The warrant was amended and extended for 30 days on December 3, 1986, and extended for an additional 30 days on January 2, 1987. During the periods covered by the warrant, conversations were monitored at Curley's Luncheonette suggesting that two other suspects involved in gambling operations at that location may have had a source providing them with confidential police information and may also have been involved in loansharking. Consequently, retrospective amendments to the warrant were obtained January 2, 1987, January 30, 1987 and February 4, 1987, in order to authorize eavesdropping at Curley's Luncheonette for the crimes of official misconduct and criminal usury. The eavesdropping warrant required OCTF to submit weekly progress reports of the surveillance to the issuing Magistrate. Following termination of the warrant and all extensions on February 1, 1987, OCTF applied for and was granted two 90-day postponements of the notice of eavesdropping required by CPL 700.50 (3).

■ Defendants' first ground for suppressing the eavesdropping evidence is that OCTF did not serve them with the amendments to the warrant relating to official misconduct and criminal usury, granted on January 30, 1987 and February 4, 1987, within 15 days after their arraignment on the indictments herein, as required by CPL 700.70. OCTF explained that it had inadvertently omitted these amendments when it timely served the initial warrant and every other amendment, together with all supporting documents. The omission does not require suppression of any relevant eavesdropping evidence here. The original warrant and the amendments thereto that were timely served upon defendants covered the conversations relevant to the indictments herein that the prosecution intended to introduce against defendants. Defendants may not

complain concerning late service of amendments to the warrant authorizing the seizure of other persons' conversations unrelated to the indictments herein *(see, People v Penasso,* 142 AD2d 691, 694, *lv denied* 72 NY2d 1048).

■ Next, defendants object to the eavesdropping evidence on the ground that two of the weekly progress reports to the issuing Magistrate were served several days late. Not having shown any prejudice by reason of the delay, defendants may not avail themselves of this ground for suppression *(see, People v Marino,* 49 NY2d 774, 775). We also disagree with defendants' contention that OCTF failed to make an adequate showing of exigent circumstances for the two postponements of service of the notice of eavesdropping pursuant to CPL 700.50 (3).

■ Finally, we agree entirely with County Court's conclusion that there was a sufficient showing of probable cause in the warrant application to support eavesdropping at both the facility location and at Curley's Luncheonette. The evidence submitted consisted not only of the statements of confidential informants, but of observations from physical surveillance and statements unwittingly made to police officers by defendants' confederates during the course of the undercover investigation. To the extent that probable cause was partly based upon the reports of confidential informants, their detailed description of the criminal activities of defendants and their associates, much of which was confirmed by undercover officers' observations and the statements against penal interests made by coconspirators, amply complied with both prongs of the *Aguilar-Spinelli* test *(Aguilar v Texas,* 378 US 108; *Spinelli v United States,* 393 US 410; *see, People v Tambe,* 71 NY2d 492, 500; *People v Bigelow,* 66 NY2d 417, 423-424; *People v Johnson,* 66 NY2d 398, 403; *People v Rodriguez,* 52 NY2d 483, 489-493; *People v Elwell,* 50 NY2d 231, 237).

The only remaining issue is Caiazzo's challenge to the validity of the seizure of certain gambling records in the search by the Colonie Police of packages in the hands of Federal Express addressed to him in Las Vegas, Nevada, and sent from the premises at 952 Crane Street. These items were inspected and photographed during the execution of search warrants issued by a Colonie Town Justice. Although a total of eight warrants were issued for the search of the packages sent via Federal Express from 952 Crane Street, the challenged evidence came from searches pursuant to the fifth of

such warrants, issued October 27, 1986, and the eighth warrant, issued December 10, 1986.

 Caiazzo objected to the admissibility of the items on the ground that the evidence supporting probable cause for the issuance of the fifth and eighth warrants was illegally acquired, i.e., was obtained through the execution of the previous warrants, the issuance of which was not supported by probable cause. Thus, Caiazzo argues that the evidence acquired under the authority of the fifth and eighth warrants should be suppressed as the "fruit of the poisonous tree". We disagree. The only possibly relevant evidence procured under the first, second and third warrants were packets of substantial sums of cash mainly sent either from or to Caiazzo at the 952 Crane Street address. This evidence, however, was merely cumulative of evidence of prior consignments of substantial amounts of cash to and from the premises at 952 Crane Street which had been independently obtained by Federal Express. Hard evidence linking the transmittal of money from the Crane Street premises to illegal gambling activity was only obtained upon execution of the fourth warrant on October 22, 1986. The package inspected pursuant to that warrant contained cash and extensive sports betting records. The sender of that package was the "Hungry Hill Social Club", 952 Crane Street, and the addressee was Mickey Esposito in Neptune, New Jersey. Thus, Caiazzo was neither the sender nor intended receiver of this package. Indeed, OCTF submitted uncontested proof in opposition to the motion to suppress that Caiazzo had already moved to Las Vegas, Nevada, when that warrant was issued. Clearly, under these circumstances, Caiazzo lacked standing to object to any illegal search pursuant to the fourth search warrant (see, People v Henley, 53 NY2d 403, 407-408; see also, United States v Koenig, 856 F2d 843, 846; 4 LaFave, Search and Seizure § 11.4, at 371 [2d ed]).

Under the circumstances presented here, the possibly tainted evidence acquired under the first three search warrants would only render the fifth warrant invalid if the former evidence "affected [the Magistrate's] decision to issue the [fifth] warrant" (Murray v United States, 487 US 533, 542). Under the prevailing case law, that issue is to be determined on the basis of whether the unobjectionable evidence in the application for the fifth warrant by itself established probable cause (see, United States v Gillenwaters, 890 F2d 679, 682; United States v Alexander, 761 F2d 1294, 1299-1300). However, it can be argued that the more rigorous "harmless error

12

beyond a reasonable doubt" standard should be applied *(see, United States v Gallo,* 859 F2d 1078, 1082-1084, *cert denied sub nom. Miron v United States,* 490 US 1089). In our view, the transmittals of cash revealed in the execution of the first three search warrants was cumulative of other lawfully acquired evidence and was almost completely lacking in probative value compared to the other evidence submitted on the application. Therefore, under either of the foregoing standards, we conclude that Caiazzo has not established any constitutional infirmity in the issuance of the fifth search warrant and, a fortiori, in the issuance of the eighth warrant. Accordingly, we affirm County Court's denial of Caiazzo's motion to suppress without reaching the issue of whether Caiazzo lacked a sufficient expectation of privacy to give him standing because Federal Express, in its air bills, expressly reserved the right to open and inspect the packages searched pursuant to the various warrants *(see, United States v Koenig, supra; cf., United States v Phillips,* 478 F2d 743; 3 LaFave, Search and Seizure § 10.3 [b], at 679 [2d ed]).

WEISS, J. P., MIKOLL and YESAWICH, JR., JJ., concur.

Judgments affirmed.