[No. S074181. July 12, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
CARL WILLIAM WEISS, Defendant and Appellant.

**COUNSEL**

Andrian & Gallenson, Chris P. Andrian and Stephen Gallenson for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson and David P. Druliner, Chief Assistant Attorneys General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Amy Haddix, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CHIN, J.**—We must decide in what way illegally obtained information in an affidavit supporting a search warrant affects the warrant's validity. The Court of Appeal concluded that the illegally obtained information must be excised, but if the officers would have sought the warrant without it, and the

remaining information supplies probable cause, the warrant is valid. Defendant argues that the reviewing court must additionally find that the magistrate would have issued the warrant without the tainted information. Consistent with most courts that have considered the question, we disagree with defendant and agree with the Court of Appeal. Accordingly, we affirm the judgment and disapprove the contrary decision of *People* v. *Koch* (1989) 209 Cal.App.3d 770 [257 Cal.Rptr. 483].

## I. FACTUAL AND PROCEDURAL HISTORY[1]

Officers serving a search warrant at a residence in Forestville discovered 83 marijuana plants growing under lights in the basement. The basement was accessible through two locked doors, one interior and one exterior. Bruce Nicolaisen, who lived on the property, was confined to a wheelchair and could not have used either door to the basement. He refused to tell who had the key or combination to the locks. Nicolaisen's roommate, Lynnette Kester, arrived after the officers served the warrant. She told an officer that a friend of Nicolaisen's named Carl came by daily to take care of the pool and a garden at the back of the property. While watching Nicolaisen's residence during the previous week, officers had seen a visiting vehicle they identified as belonging to defendant Carl William Weiss. Department of Motor Vehicles records provided a description of defendant that matched Kester's description of "Carl."

The officers decided to question defendant about the marijuana-growing operation in Nicolaisen's house. They arrived at defendant's Forestville home late in the afternoon. Defendant answered the door, and an officer asked to come in and speak with him. Defendant asked if the officer had a search warrant. The officer said he did not. Defendant stepped outside, and the officer said he wanted to ask about defendant's potential involvement in marijuana cultivation. The remainder of the search team, amounting to at least six officers, had arrived by this time. Defendant looked around nervously and said he did not want to talk. One officer walked around the house, which was built on a slope and rested on posts in the rear. In the area beneath the rear of the house, the officer observed a variety of materials used for indoor marijuana cultivation. Other officers who were in the driveway in front of the house observed several five-gallon plastic buckets painted with camouflage colors next to the driveway, a larger brown barrel wedged between trees with an irrigation line connected to its bottom, and a section of plastic pipe painted in camouflage colors running down the hill toward a vegetable garden.

The officers left about 10 minutes after their arrival, but 2 of them guarded the entrance to defendant's driveway, which was not visible from

---

[1]This factual summary is drawn from the Court of Appeal's summary.

the house. After about an hour, defendant drove away from his house, but the officers stopped and detained him. They recovered a key from him that was later found to fit a lock on a door to Nicolaisen's basement. The officers entered and secured defendant's house pending the issuance of a search warrant.

The affidavit supporting the search warrant application described the following: (1) the service of a warrant and the legal search at Nicolaisen's house; (2) the information that Kester provided; (3) the identification of Weiss from Department of Motor Vehicles records; (4) the interview with Weiss at his home; (5) the observation of the water barrel and the pipeline in front of his house and the growing materials at the rear; and (6) Weiss's detention as he was attempting to leave home. The magistrate issued a search warrant. Officers executing the warrant discovered evidence of marijuana cultivation.

Defendant was charged with marijuana cultivation and possession for sale. He moved to suppress evidence. The trial court ruled that the agent who observed the growing materials beneath the house had no justification for searching down the hillside, and it suppressed those observations. However, the court determined that the warrant application provided sufficient probable cause after the illegal observations were excised. Therefore, the court upheld the warrant. Defendant submitted supplemental points and authorities, arguing that the court additionally had to determine whether the search behind the house had affected either the officer's decision to seek a warrant or the magistrate's decision to grant the warrant. Based on defendant's earlier concession, the court found that the officers would have sought the warrant without the information derived from the illegal search. It also found that the magistrate would have granted the warrant without this information. Defendant then pleaded no contest to the cultivation charge.

The Court of Appeal affirmed. We granted defendant's petition to review whether the Court of Appeal correctly concluded that "a finding that the redacted affidavit is sufficient to establish probable cause is enough to meet the burden of showing the magistrate would have issued the warrant without the illegally obtained information; no further finding is necessary."

## II. DISCUSSION

Defendant's petition for, and our grant of, review presents a single narrow but important legal issue. Accordingly, we accept the lower courts' conclusions that (1) part of the information presented in the affidavit supporting the search warrant application was obtained illegally; (2) when the illegally

obtained information is excised from the affidavit, probable cause remains to support the warrant; and (3) the officers would have sought the warrant without the illegally obtained information. None of these conclusions present an issue worthy of review. (Cal. Rules of Court, rules 28(e)(2), 29.2(a), (b); see *Southern Cal. Ch. of Associated Builders etc. Com.* v. *California Apprenticeship Council* (1992) 4 Cal.4th 422, 431, fn. 3 [14 Cal.Rptr.2d 491, 841 P.2d 1011].)

██ We decide only whether, for the warrant to be valid, the trial court must make some additional finding regarding the effect the illegally obtained information had on the magistrate who issued the warrant. Relying on *Murray* v. *United States* (1988) 487 U.S. 533 [108 S.Ct. 2529, 101 L.Ed.2d 472] (*Murray*) and *People* v. *Koch, supra*, 209 Cal.App.3d 770, defendant argues that the reviewing court is additionally "required to make a factual determination that the magistrate issuing the search warrant was not affected by illegally obtained information contained in the affidavit in support of the warrant."

██ It has long been established that even if a criminal investigation involved some illegal conduct, courts will admit evidence derived from an "independent source." (*Silverthorne Lumber Co.* v. *United States* (1920) 251 U.S. 385, 392 [40 S.Ct. 182, 183, 64 L.Ed. 319, 24 A.L.R. 1426].) In a case involving the inevitable discovery rule, a close relative of the independent source doctrine, the United States Supreme Court explained the basis for admitting evidence derived from a source independent of illegal conduct. "The core rationale consistently advanced by this Court for extending the exclusionary rule to evidence that is the fruit of unlawful police conduct has been that this admittedly drastic and socially costly course is needed to deter police from violations of constitutional and statutory protections. This Court has accepted the argument that the way to ensure such protections is to exclude evidence seized as a result of such violations notwithstanding the high social cost of letting persons obviously guilty go unpunished for their crimes. On this rationale, the prosecution is not to be put in a better position than it would have been in if no illegality had transpired.

"By contrast, the derivative evidence analysis ensures that the prosecution is not put in a *worse* position simply because of some earlier police error or misconduct. The independent source doctrine allows admission of evidence that has been discovered by means wholly independent of any constitutional violation. . . . The independent source doctrine teaches us that the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a *worse*, position that they would have

been in if no police error or misconduct had occurred. [Citations.] When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation." (*Nix* v. *Williams* (1984) 467 U.S. 431, 442-443 [104 S.Ct. 2501, 2508-2509, 81 L.Ed.2d 377], original italics, fn. omitted.)

The independent source doctrine applies in California. (*People* v. *Bennett* (1998) 17 Cal.4th 373, 390 [70 Cal.Rptr.2d 850, 949 P.2d 947]; see Cal. Const., art. I, § 28, subd. (d).) If, after some illegal conduct, the police obtain a search warrant they would have sought without that conduct, and none of the supporting documents cites information derived from that conduct, application of the doctrine is relatively easy: The court need not suppress evidence found in the resulting search. "Because '[n]one of the information on which the warrant was secured was derived from or related in any way to the initial [unlawful conduct],' . . . the search warrant was 'a "means sufficiently distinguishable" to purge the evidence of any "taint" arising from the [unlawful conduct].' " (*People* v. *Bennett, supra,* 17 Cal.4th at p. 389, quoting *Segura* v. *United States* (1984) 468 U.S. 796, 814 [104 S.Ct. 3380, 3390, 82 L.Ed.2d 599].) Here, however, the affidavit supporting the search warrant did contain information derived from unlawful conduct as well as other, untainted, information. In that situation, until 1988, it was fairly well settled that the reviewing court must excise the tainted information, but the warrant remained valid if the remaining information provided probable cause for its issuance. (E.g., *People* v. *Gesner* (1988) 202 Cal.App.3d 581, 589-590 [248 Cal.Rptr. 324]; *People* v. *Angulo* (1988) 199 Cal.App.3d 370, 375 [244 Cal.Rptr. 819]; *U.S.* v. *Grandstaff* (9th Cir. 1987) 813 F.2d 1353, 1355.)

In 1988, the high court decided *Murray, supra,* 487 U.S. 533. In *Murray,* the police observed some evidence during an illegal entry. Later, they discovered the same evidence in executing a search warrant. The issue was whether the later lawful discovery made the evidence admissible despite the original illegal observation of the same evidence. The high court, by a four-to-three plurality (two justices did not participate), held the evidence admissible under the independent source doctrine. The plurality reasoned: "Petitioners' asserted policy basis for excluding evidence which is initially discovered during an illegal search, but is subsequently acquired through an independent and lawful source, is that a contrary rule will remove all deterrence to, and indeed positively encourage, unlawful police searches. As petitioners see the incentives, law enforcement officers will routinely enter without a warrant to make sure that what they expect to be on the premises is in fact there. If it is not, they will have spared themselves the time and trouble of getting a warrant; if it is, they can get the warrant and use the

evidence despite the unlawful entry. [Citation.] We see the incentives differently. An officer with probable cause sufficient to obtain a search warrant would be foolish to enter the premises first in an unlawful manner. By doing so, he would risk suppression of all evidence on the premises, both seen and unseen, since his action would add to the normal burden of convincing a magistrate that there is probable cause the much more onerous burden of convincing a trial court that no information gained from the illegal entry *affected* either the law enforcement officers' decision to seek a warrant or *the magistrate's decision to grant it.*" (*Id.* at pp. 539-540 [108 S.Ct. at p. 2534], italics added.)

The *Murray* court concluded, "The ultimate question, therefore, is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here. This would not have been the case if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or *if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant.*" (*Murray, supra,* 487 U.S. at p. 542 [108 S.Ct. at p. 2536], italics added, fn. omitted.)

 The question is whether *Murray*, and particularly the language italicized above, changed the law at issue here. It certainly seems to require a finding that the police subjectively would have sought the warrant even without the illegal conduct, a finding made in this case. If information from a tainted source is included in the warrant application, does *Murray* also require the reviewing court to make some finding regarding its effect on the issuing magistrate beyond excising that information and determining whether what remains supplies probable cause? A California case decided shortly after *Murray* thought so. (*People* v. *Koch, supra,* 209 Cal.App.3d 770.) The *Koch* court reviewed *Murray*, which was filed while the *Koch* appeal was pending, and found that the existing rule was "no longer sufficient because the prosecution must satisfy additional burdens before the taint of the earlier illegality may be said to have been purged. Obviously, the illegally obtained information must be disregarded since it is the product of the unlawful entry, the infamous fruit of the poisonous tree. But the mere excision of the illegally obtained information can no longer be deemed, by itself, sufficient to dissipate the taint. . . . [¶] If the magistrate relied upon the illegally obtained information in reaching his conclusion that probable cause had been shown by the affidavit, then it could not be said that the challenged evidence was obtained by means sufficiently distinguishable to be purged of the primary taint." (*People* v. *Koch, supra,* 209 Cal.App.3d at pp. 787-788.)

*Koch* concluded, "it is no longer sufficient for the prosecution to simply establish that the warrant affidavit still contained probable cause after the

illegally obtained observations have been excised. . . . The court must also explicitly find that the magistrate would have issued the warrant even if the information derived from the illegal entry had not been included in the affidavit." (*People* v. *Koch, supra,* 209 Cal.App.3d at p. 788.) The court suggested that, to carry its burden of proof, the prosecution might call the issuing magistrate as a witness or rely on circumstantial evidence. (*Id.* at p. 788, fn. 5.)

Most later courts that have considered the question disagree with this reading of *Murray.* The Court of Appeal in this case concluded that "a finding that the redacted affidavit is sufficient to establish probable cause is enough to meet the burden of showing the magistrate would have issued the warrant without the illegally obtained information; no further finding is necessary." It collected many of the cases supporting this conclusion and compared them to the few reaching different results. "See, e.g., *U.S.* v. *Ford* (1st Cir. 1994) 22 F.3d 374, 379; *U.S.* v. *Herrold* (3d Cir. 1992) 962 F.2d 1131, 1141-1143; *U.S.* v. *Gillenwaters* (4th Cir. 1989) 890 F.2d 679, 681-682; *U.S.* v. *Restrepo* (5th Cir. 1992) 966 F.2d 964, 969-970; *U.S.* v. *Shamaeizadeh* (6th Cir. 1996) 80 F.3d 1131, 1136; *U.S.* v. *Markling* (7th Cir. 1993) 7 F.3d 1309, 1315-1316; *U.S.* v. *Reed* (9th Cir. 1994) 15 F.3d 928, 933; *State* v. *Gulbrandson* (1995) 184 Ariz. 46 [906 P.2d 579, 591]; *Williams* v. *State* (1997) 327 Ark. 213 [939 S.W.2d 264, 268]; *People* v. *Sprowl* (Colo.Ct.App. 1989) 790 P.2d 848, 850-851; *State* v. *Joyce* (1997) 243 Conn. 282 [705 A.2d 181, 185]; *People* v. *Bielawski* (1994) 255 Ill.App.3d 635 [194 Ill.Dec. 373, 627 N.E.2d 710, 713-715]; *State* v. *Seager* (Iowa 1997) 571 N.W.2d 204, 212, footnote 5; *State* v. *Hills* (La.Ct.App. 1993) 626 So.2d 452, 454-455; *Klingenstein* v. *State* (1993) 330 Md. 402 [624 A.2d 532, 538]; *People* v. *Melotik* (1997) 221 Mich.App. 190 [561 N.W.2d 453, 458]; *State* v. *Lieberg* (Minn.Ct.App. 1996) 553 N.W.2d 51, 55; *State* v. *McLean* (1995) 120 N.C.App. 838 [463 S.E.2d 826, 828-829]; *People* v. *Cassadei* (1991) 165 A.D.2d 6 [565 N.Y.S.2d 286, 289-290]; *State* v. *Lange* (1990) 158 Wis.2d 609, footnote 3 [463 N.W.2d 390, 397].

"Compare *State* v. *Lewis* (Alaska Ct.App. 1991) 809 P.2d 925, 929-930 (although police had probable cause for warrant before entry, they used information from illegal entry to obtain warrant; thus warrant was not 'wholly independent' of entry); *Com.* v. *Melendez* (1996) 544 Pa. 323 [676 A.2d 226, 231] (source must be 'truly independent' from both tainted evidence and from investigative team that conducted illegal search); *State* v. *Clark* (Tenn. 1992) 844 S.W.2d 597, 600 (independent source doctrine does not apply if tainted information was presented to magistrate in warrant application). See also *U.S.* v. *Dawkins* (D.C. Cir. 1994) 17 F.3d 399, 408 [305 App.D.C. 83] (illegally obtained information played 'large role' in decision to grant warrant; other information not considered).

"See generally, 5 LaFave, Search and Seizure (3d ed. 1996) section 11.4(f), pages 287-292."

We agree with the conclusion of the Court of Appeal here and the majority of courts that have considered this issue. As explained in *U.S.* v. *Markling* (7th Cir. 1993) 7 F.3d 1309, 1316-1317, *Murray* did not change the long-standing rule that the reviewing court must excise all tainted information but then must uphold the warrant if the remaining information establishes probable cause.

"This approach is a logical application of the Supreme Court's reasoning in *Franks v. Delaware*, 438 U.S. 154, 171-72, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978). In *Franks*, the Court held that when a government agent deliberately or recklessly includes false information in a warrant application, the warrant is still valid if the other information in the application, standing alone, is sufficient to establish probable cause. [Citations.] . . . If we may uphold a warrant based on an application including knowingly false information if the other information in the application establishes probable cause, it is logical to conclude that we may uphold a warrant based on an application including illegally obtained information under the same circumstances. [Citation.]

"There is language in *Murray*, however, that could be read as casting doubt on this *Franks*-based approach to determining whether a search pursuant to a tainted warrant will support admission of evidence under the independent source doctrine. In *Murray*, the Court stated that a search pursuant to a tainted warrant is not an independent source 'if information obtained during [the illegal search] was presented to the Magistrate and affected his decision to issue the warrant.' 487 U.S. at 542, 108 S.Ct. at 2536. Taken literally, this language indicates that the relevant inquiry focuses not on whether the warrant application establishes probable cause absent the tainted information, but rather on 'the *actual* effect of the illegally acquired information upon a *particular* magistrate.' 4 Wayne R. LaFave, *Search and Seizure* § 11.4, at 82 (Supp. 1992) (emphasis in original).

"[T]he Fifth and Third Circuits in [*U.S.* v. *Restrepo* (5th Cir. 1992) 966 F.2d 964 and *U.S.* v. *Herrold* (3d Cir. 1992) 962 F.2d 1131] discussed this question and concluded that *Murray* does not alter the *Franks*-based rule that a search pursuant to a search warrant supported by probable cause absent any tainted information provides an independent source for the discovery of evidence. [Citations.] We agree with this conclusion. Other than the sentence fragment quoted above, there is no indication in *Murray* that the Court intended to reject—or even that it was considering—the

prevailing *Franks*-based rule. A rule focusing on the tainted information's actual influence on a particular magistrate would be inconsistent with *Franks*; yet, the Court in *Murray* did not cite *Franks*, much less attempt to reconcile *Murray* with *Franks*. Nor did the Court discuss the prevailing rule or cite any of the numerous cases applying that rule. And, in any event, the language in *Murray* concerning whether the tainted information 'affected [the magistrate's] decision' was dictum—that is, it was unnecessary to the disposition of the case—because in *Murray* the agents had never presented to the magistrate the information obtained from their illegal entry. [Citations.]

"Given all these factors, we agree that 'the Court's use of "affect" in *Murray* must be understood to signify affect in a substantive manner. Thus, the fact that an application for a warrant contains information obtained through an unlawful entry does not perforce indicate that the improper information "affected" [the magistrate's] decision to issue the warrant and thereby vitiate the applicability of the independent source doctrine. Rather, if the application contains probable cause apart from the improper information, then the warrant is lawful and the independent source doctrine applies, provided that the officers were not prompted to obtain the warrant by what they observed during the initial entry.' *Restrepo*, 966 F.2d at 970 (quoting *Herrold*, 962 F.2d at 1141-42)." (*U.S.* v. *Markling, supra*, 7 F.3d at pp. 1316-1317.)

Defendant argues, and the Court of Appeal here was concerned, that the excise and retest rule "is not entirely consistent" with *Murray*'s language. "There is some force," the Court of Appeal said, "in the argument that under our approach, an officer with probable cause sufficient for a search warrant has nothing to lose by verifying the presence of contraband through an unconstitutional search, and even by using the information gained in the search to bolster a subsequent warrant application. If the defendant moves to suppress in such a case, given the preexistence of probable cause (and the discovery of contraband in the defendant's possession) it may not be difficult to convince a judge that the warrant would have been requested anyway, and the redacted affidavit will pass muster."

Despite this concern, the court believed, as we do, that "the *Franks* test is fully consistent with the independent source doctrine as interpreted by the United States Supreme Court, other federal courts, and most state courts." Moreover, it is not true that law enforcement agents would have nothing to lose by including illegally obtained information in a warrant application. Reviewing courts normally give great deference to a warrant. " 'Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal

cases in this area should be largely determined by the preference to be accorded to warrants.'" (*People* v. *Superior Court* *(Corona)* (1981) 30 Cal.3d 193, 203 [178 Cal.Rptr. 334, 636 P.2d 23], quoting *United States* v. *Ventresca* (1965) 380 U.S. 102, 109 [85 S.Ct. 741, 746, 13 L.Ed.2d 684].) But we, like the Fifth Circuit Court of Appeals, "seriously doubt that it is appropriate to apply the deferential" review to a magistrate's decision to issue the warrant "when the magistrate judge never considered the warrant affidavit purged of tainted information . . . ." (*U.S.* v. *Restrepo* (5th Cir. 1992) 966 F.2d 964, 971, fn. 18.) When a neutral magistrate issues a warrant, the police usually can be fairly confident a reviewing court will uphold that warrant. (See also *United States* v. *Leon* (1984) 468 U.S. 897 [104 S.Ct. 3405, 82 L.Ed.2d 677]; *People* v. *Camarella* (1991) 54 Cal.3d 592 [286 Cal.Rptr. 780, 818 P.2d 63].) Law enforcement agents will lose this deferential treatment, however, if they include tainted information in the warrant application. To ensure the balance the *Murray* court sought and avoid creating an incentive to conduct illegal searches, courts will "depriv[e] such warrants of the special treatment they would otherwise receive . . . ." (5 LaFave, Search and Seizure (3d ed. 1996) § 11.4(f), p. 290.)

## III. Conclusion

We affirm the judgment of the Court of Appeal and disapprove *People* v. *Koch, supra,* 209 Cal.App.3d 770, to the extent it is inconsistent with this opinion.

George, C. J., Mosk, J., Kennard, J., Baxter, J., Werdegar, J., and Brown, J., concurred.