Filed 5/23/16  P. v. Gomez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C077249 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF11872) |
| v. | |
| DONALD LEROY GOMEZ, | |
| Defendant and Appellant. | |

A jury found defendant Donald Leroy Gomez guilty of transporting methamphetamine (count 1; Health & Saf. Code, § 11379, subd. (a)), possessing methamphetamine for sale (count 2; *id.*, § 11378), and possession of marijuana for sale (count 3; *id.*, § 11359).  The trial court found true enhancements for two prior drug convictions with respect to both counts 1 and 2.  (*Id.*, § 11370.2, subd. (c).)  The court sentenced defendant to an unstayed aggregate term of 10 years eight months in prison.

On appeal, defendant contends the trial court erred in denying his motion to suppress, in which he had argued the search warrant was based upon evidence obtained

from illegal wiretaps. Defendant also contends the trial court erred by imposing sentence enhancements for two prior drug convictions on both counts 1 and 2.

As we explain, the trial court erred in conducting the suppression hearing without giving the People the opportunity to prove that any illegality of the wiretaps did not taint the other evidence supporting the search warrant. Further, substantial evidence does not support the court's finding on this issue. Accordingly, we reverse and remand for further consideration of the suppression issue.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Crimes*

In February 2011, a search warrant was issued for defendant, his residence, and his cars, based on an affidavit stating facts from unidentified confidential informants, a portion of which was and remains sealed. In the search of defendant's car, the police found a stun gun, a bag of marijuana, and an empty hidden compartment in the car. Inside defendant's apartment, they found multiple baggies of marijuana, two digital scales, a methamphetamine pipe hidden inside a Pringles can with a false bottom, a syringe inside a hairspray can with a false compartment, several other items with false compartments, and a police scanner. Defendant had $402 in cash in his pocket and two bags of methamphetamine hidden in his underwear.

*The Search Warrant*

The statement of probable cause supporting the search warrant was prepared by Jonathan Updegraff, an investigator with the Yolo County District Attorney's Office, at the request of Yolo Narcotic Enforcement Team (YONET) Agent LeFlore. Updegraff stated as follows:

In May 2009, YONET agents were conducting surveillance on Jessica Reyes, a suspected methamphetamine dealer, and observed her leave a motel room and get into a truck driven by defendant. Soon thereafter, YONET agents found evidence of drug sales in Reyes's hotel room. Between May 2009 and January 2010, YONET received two anonymous tips that defendant was selling methamphetamine.

In January 2010, a YONET confidential informant purchased about seven grams of methamphetamine from Edward Tulysewski. While investigating Tulysewski, YONET learned from another law enforcement agency of a large methamphetamine distribution by Tulysewski and defendant. Further details of this distribution were sealed in attachment A to the statement of probable cause (attachment A). YONET eventually arrested Tulysewski in December 2010 for possession of methamphetamine for sale.

In December 2010, YONET agents arrested for possession for sale of methamphetamine an individual who became a confidential informant known as "C." In hopes of consideration in C's own case, C informed YONET agents that defendant had the nickname "Go Go" and was a rival methamphetamine dealer, the biggest in Yolo County.

In January and February 2011, three other confidential informants known as "X," "B," and "Y" separately told YONET agents that defendant was a methamphetamine dealer. X provided details of defendant's activities. Further information about X was sealed in attachment A. B said he had previously been to defendant's apartment and purchased a half ounce of methamphetamine. Y, who was also a methamphetamine dealer, described defendant as a large scale methamphetamine dealer and said he had bought methamphetamine from defendant. Further information about Y was sealed in attachment A.

Following a defense motion, the court held in camera hearings pursuant to *People v. Hobbs* (1994) 7 Cal.4th 948, and released a heavily redacted version of the previously sealed attachment A to the search warrant affidavit, which provided details

3

about X, Y, and the wiretaps. The court denied the defense motion to disclose the identity of the confidential informants.

In the redacted portion of attachment A, Updegraff states that in January 2010 Agent LeFlore learned from Sacramento Sheriff Deputy Gregory of two major methamphetamine dealers in Yolo County, one of whom was defendant. LeFlore and Gregory maintained contact throughout 2010 and LeFlore learned of a seizure of methamphetamine; the seizure was based on a wiretap obtained pursuant to a court order. After the seizure, another law enforcement agency had a separate wiretap up on an associate of that target, and Gregory continued to receive wiretap information regarding distributors in the Sacramento area. LeFlore learned that defendant was in continued contact with a dealer and obtained methamphetamine. During the last week of January 2011, Gregory told LeFlore of a seizure of methamphetamine. During this seizure, law enforcement located a pay/owe ledger for Go Go indicating $34,000. LeFlore knew Go Go was defendant.

Almost all the information about X was redacted.

Y was a methamphetamine dealer who was arrested with the drug. Y provided LeFlore with information in hopes of obtaining consideration for his case. Y had obtained methamphetamine from defendant and knew his residence and vehicles. Y had known defendant for about two years.

*Motions to Suppress*

Defendant moved to suppress evidence, quash the warrant, and dismiss the indictment, arguing the People had failed to comply with the notice and production provisions of Penal Code section 629.50 et seq. governing wiretaps.[1] Defendant argued the People had failed to comply with his request for information regarding his

---

[1] Further undesignated statutory references are to the Penal Code.

4

identification as the result of a wiretap. He argued that this failure to disclose rendered any of the wiretaps under which he was intercepted illegal as to him, and that he would not have been investigated had the illegally obtained information from the wiretap not been communicated to LeFlore by Gregory.

In response, the People did not explicitly counter defendant's argument that proper procedures were not followed and the resulting investigation was tainted from its inception due to the statutory violations. Instead, the People merely asserted that the court had authority to excise portions of the information in the affidavit relating to the wiretaps and determine if the remaining portion was sufficient to establish probable cause. In written opposition, the People did not concede any illegality of the wiretaps but offered to stipulate to remove the wiretap information from the warrant and then have the court determine if the remaining information established probable cause. At the continued hearing, however, the People stipulated for purposes of the hearing on the motion to suppress evidence ("to move this case along") that the wiretap was illegally obtained. A codefendant argued that if the wiretap were illegal, the burden shifted to the People to show the remaining evidence was untainted by the intercepted information. The court found it "clear" there was no connection between X and the intercepted information and that there was no evidence of any connection between the wiretap and the other informants. The court found, "without considering the information obtained through the wiretaps," that the affidavit contained sufficient information to establish probable cause and denied the motion without prejudice to renew if new information was discovered.

Defendant moved a second time to suppress the remaining evidence and dismiss the indictment, again arguing the People failed to provide proper notice and production

under section 629.70.[2]  The People stated the transcripts of the intercepted calls involving defendant had been provided to defendant, and explained that the federal court had issued a sealing order as to one of the wiretaps, so no further information could be released.  The People argued the investigation of defendant began before the wiretap information was obtained by the investigating officers.

The court agreed with defendant that the People had failed to comply with section 629.70 and found that suppression of the wiretap information was the proper remedy.  The court reconsidered the remaining evidence in the affidavit, including the information provided by the confidential informants, and again refused to suppress the search warrant, finding the informants' information was not derived from the wiretaps.  In particular, the court noted the informants' information came many months after the disclosure of the original wiretap information in January 2010.  The court again concluded there was sufficient evidence unrelated to the wiretaps establishing probable cause.

## DISCUSSION

### I

*Motion to Suppress*

Defendant contends the trial court erred in failing to suppress all of the evidence providing probable cause for the search warrant because the wiretaps from which all the

---

[2]  Section 629.70 provides in part:  "(a) A defendant shall be notified that he or she was identified as the result of an interception that was obtained pursuant to this chapter. The notice shall be provided prior to the entry of a plea of guilty or nolo contendere, or at least 10 days prior to any trial, hearing, or proceeding in the case other than an arraignment or grand jury proceeding.
"(b) Within the time period specified in subdivision (c) [10 days before hearing or trial], the prosecution shall provide to the defendant a copy of all recorded interceptions from which evidence against the defendant was derived, including a copy of the court order, accompanying application, and monitoring logs.
"[¶]
"(d) A court may issue an order limiting disclosures pursuant to subdivisions (a) and (b) upon a showing of good cause."

6

evidence was derived were illegal and the remaining evidence contained in the affidavit was tainted with that illegality. The Attorney General counters that the legality of the wiretaps is "not relevant" and "whether a violation [of law] occurred is not an issue." She argues only that the evidence presented in the trial court supported the trial court's finding "that the warrant was supported by evidence that was not derived from the wiretaps." She and defendant agree that we should review the unredacted sealed copy of the affidavit as well as the sealed transcripts of the in camera hearings regarding the motion to quash. We have done so.

It is settled that a search warrant based on illegally obtained evidence is invalid. (*People v. Roberts* (1956) 47 Cal.2d 374, 377.)

The collection and use in court of wiretap communications, or derivative evidence, is regulated by federal law (18 U.S.C. §§ 2510 et seq.) and analogous California law (§ 629.50 et seq.). Here the record is unclear as to how many wiretaps there were, who exactly was the target or targets, and what court approved the wiretaps, although at least one apparently was federally approved. In the trial court, defendant challenged the validity of the wiretaps by first noting that the People had failed to comply with the requirements of section 629.70, subdivision (a) that a defendant be notified when identified as the result of an interception. After setting forth a summary of the requirements for a valid wiretap, defendant asserted, "it is obvious that the procedures taken in the case at bar are patently illegal, a violation of Federal and State laws." On appeal, defendant adds that the wiretaps are illegal because he was not their original target, an argument he did not make in the trial court. As we have noted, the Attorney General declines to defend the wiretaps' legality on appeal, and implicitly assumes their suppression was proper.

We observe that the only noncompliance with the wiretap statutes that defendant actually demonstrated in the trial court is the People's failure to provide him with certain information about the wiretaps before the hearing on his motion to quash. The record

7

shows that defendant did receive transcripts of the intercepted phone calls and the monitoring logs, but nothing shows that he received the court order and accompanying application, as required by section 629.70, subdivision (b). (See also 18 U.S.C. § 2518(8)(d) [providing for discretionary inventory notice to other parties to intercepted communications within 90 days after wiretap was terminated or reapplication denied].)

Not all violations of the wiretap statutes require suppression, only those that frustrate a central purpose of the statutory scheme. (*United States v. Donovan* (1977) 429 U.S. 413, 432-440 [50 L.Ed.2d 652]; *People v. Jackson* (2005) 129 Cal.App.4th 129, 149-152.) Defendant has not shown the notice and production requirement of section 629.70 falls within the category of violations requiring suppression.

Of course, we recognize that defendant was hampered in challenging the validity of the wiretaps because the People failed to provide him with the authorizing court order and the accompanying application. The People were apparently unable to do so, at least at the time of the second suppression motion, because the federal court had issued a sealing order. The People did not, however, seek an order limiting the required disclosures for good cause. (§ 629.70, subd. (d).) Instead, the People chose to stipulate, for purposes of the suppression hearing only, that the wiretaps were illegal.

The People's position was and remains that the affidavit supporting the search warrant contained sufficient evidence of probable cause independent of the information from the wiretaps. "It has long been established that even if a criminal investigation involved some illegal conduct, courts will admit evidence derived from an 'independent source.' [Citation.]" (*People v. Weiss* (1999) 20 Cal.4th 1073, 1077.) "[T]he reviewing court must excise all tainted information but then must uphold the warrant if the remaining information establishes probable cause." (*Id.* at p. 1081.)

Where the illegally obtained evidence is information describing defendant's criminal activity which was obtained from a wiretap, determining the extent of the taint may be difficult. The United States Supreme Court has addressed this specific situation.

8

In *Nardone v. United States* (1939) 308 U.S. 338, 339 [84 L.Ed. 307] (*Nardone*), the issue was whether the wiretap statutes prohibited only the introduction into evidence of the intercepted communications or also other use of the proscribed evidence. The *Nadone* court then set forth the procedure to be followed. "In practice this generalized statement may conceal concrete complexities. Sophisticated argument may prove a causal connection between information obtained through illicit wire-tapping and the Government's proof. As a matter of good sense, however, such connection may have become so attenuated as to dissipate the taint. . . . The burden is, of course, on the accused in the first instance to prove to the trial court's satisfaction that wire-tapping was unlawfully employed. Once that is established -- as was plainly done here -- the trial judge must give opportunity, however closely confined, to the accused to prove that a substantial portion of the case against him was a fruit of the poisonous tree. This leaves ample opportunity to the Government to convince the trial court that its proof had an independent origin." (*Id.* at p. 341.)

In *Alderman v. United States* (1969) 394 U.S. 165, at page 183 [22 L.Ed.2d 178] (*Alderman*), another wiretap case, the high court reiterated that where there is an illegal search, the People have "the ultimate burden of persuasion to show that its evidence is untainted," but the defendant "must go forward with specific evidence demonstrating taint."

The trial court did not employ this well-established burden-shifting procedure in this case. Rather, the court determined on its own, without input from the parties on this issue, whether the affidavit contained sufficient untainted evidence to establish probable cause. The court found the evidence supplied by B, C, X, and Y was unrelated to the wiretaps because the information from the informants was received nearly a year after the initial wiretap information was communicated to YONET and there was no evidence the informant information was derived from the wiretap information.

We review the court's finding for substantial evidence. (*People v. Cella* (1983) 139 Cal.App.3d 391, 399.) Here, our review reveals that the court's findings are based on the faulty premise that YONET received wiretap information only once--in January 2010. The affidavit states, however, that LeFlore and Gregory continued to be in contact throughout 2010, and Gregory informed LeFlore of major drug seizures and wiretap information revealing that defendant received methamphetamine from his supplier during that time. While there was evidence that defendant came to the attention of Yolo County law enforcement for his involvement with illegal drugs in 2009--both from the Reyes case and anonymous tips (which was before YONET received the initial wiretap information)--there was no information in the affidavit suggesting that YONET began *investigating* defendant before the wiretap information was received. The record is vague as to how the wiretap information was related to subsequent drug seizures (such as the one where the pay/owe ledger for Go Go was found) and the arrest of Y and C, but the timing strongly suggests a connection that was not dispelled. Further, the sealed portion of the affidavit indicates one informant gave information about defendant only after the law enforcement officer specifically asked about defendant, and this inquiry occurred in early 2011--a year after the original disclosure was made and a year during which Gregory had given LeFlore ongoing information obtained from at least one wiretap. Substantial evidence does not support the court's findings that all of the information received from the informants was independent of the wiretap information.

Ordinarily, a lack of substantial evidence to support the trial court's findings results simply in reversal of the judgment. In this case, however, the trial court did not offer the People the opportunity to prove some or all of the information from the informants was independent of the taint of the (stipulated) illegal wiretaps. On this record, we cannot definitively find that the People would be unable to meet that burden. Nor did the trial court require defendant to provide "specific evidence demonstrating taint." (*Alderman, supra,* 394 U.S. at p. 183.) Because the parties were not required to

meet their respective burdens on the issue, or even given the opportunity to do so, the better remedy is to remand for a proper hearing under *Nadone* and *Alderman*. (See *People v. Henderson* (1990) 220 Cal.App.3d 1632, 1654 [cause remanded for new suppression hearing where People not given opportunity to prove attenuation of taint].)

Further, we cannot ignore that the passage of time may have affected the issues relating to the suppression of evidence. It is over five years since the search warrant issued and over two years since the second hearing on the motion to suppress. In that time, the wiretap investigations referred to in the warrant have likely concluded, the federal sealing order may have been lifted, and the People may now be able to make the full disclosure required under section 629.70. In such circumstances, assuming the trial court releases the People from their earlier stipulation to illegality, the burden would be on defendant to establish in the first instance that the wiretap information was illegally obtained. (*Nardone, supra,* 308 U.S. at p. 341.)

II

*Sentencing Enhancements*

Defendant was charged on counts 1 and 2 with enhancements for the same two drug-related prior convictions. (Health & Saf. Code, § 11370.2, subd. (c).) The court imposed two enhancements on each of counts 1 and 2, staying the enhancement on count 2. Defendant contends the trial court should have struck, rather than stayed, the enhancements on count 2, and the People agree. We agree with the parties.

Health and Safety Code section 11370.2 enhancements are status enhancements and may be imposed only once as part of the aggregate sentence when, as here, the same subdivisions of section 11370.2 apply to the convictions. (*People v. Edwards* (2011) 195 Cal.App.4th 1051, 1057-1058.) Accordingly, if defendant's sentence is reinstated following remand, the two 3-year enhancements on count 2 should be stricken, not stayed.

11

## DISPOSITION

The judgment is reversed and the cause remanded to the trial court with directions to conduct a new hearing on the motion to suppress evidence in accordance with *Nadone* and *Alderman,* and as set forth in this opinion. If the motion to suppress is denied, the judgment shall be reinstated, except that the two 3-year prior prison term enhancements shall not be imposed on count 2.

         /s/
Duarte, J.

We concur:

      /s/
Robie, Acting P. J.

      /s/
Murray, J.

12