[No. B031250. Second Dist., Div. Three. Aug. 17, 1988.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
WILLIAM HINE OVERLAND, Real Party in Interest.

COUNSEL

Ira Reiner, District Attorney, Arnold T. Guminski and Maurice H. Oppenheim, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Sherman L. Lister for Real Party in Interest.

OPINION

ARABIAN, J.—

### INTRODUCTION

The People bring a petition for writ of mandate seeking reversal of the order of respondent court excluding evidence against real party in interest William Hine Overland (defendant) pursuant to Penal Code section 1538.5. The court below found that police officers should have obtained a warrant before searching defendant's vehicle as it was not accessible to him and was under surveillance.

We find that since the police had probable cause, the search was reasonable under the automobile exception to the Fourth Amendment warrant requirement and hold that defendant's physical or temporal proximity to the search was immaterial. Accordingly, we reverse and issue a peremptory writ.

### FACTUAL STATEMENT

Defendant was charged with embezzlement of public funds, Penal Code section 424, and grand theft, Penal Code section 487. At the hearing to suppress evidence, he did not challenge the substantial accuracy or legal effect of the events which led to his arrest and established probable cause to search his vehicle. Rather, he argued that under the circumstances presented, the police were required to first obtain a search warrant. Therefore, we state the facts briefly.

Defendant was employed by the City of Redondo Beach to perform parking enforcement functions, including collecting coins from city parking meters. On the morning of September 5, 1986, he arrived at work and parked his personal vehicle, a pickup truck, in the city employees parking

lot. Using a city vehicle, he then began his rounds emptying parking meters throughout the city.

While defendant was doing so, he was under surveillance initiated by Lieutenant Larry Sprengel of the Redondo Police Department. Based upon information he had received from several individuals, Lieutenant Sprengel had reason to believe that defendant was making substantial weekly bank deposits, which were always in the form of bagged quarters. On at least some occasions, he made these deposits while using a city vehicle.[1]

As part of the surveillance team, Los Angeles County Sheriff's Deputies William Mitchell and Robert Costas watched defendant's movements throughout the morning and observed him open numerous parking meters and appear to transfer coins from the meters into canvas bags. After making several such collections, defendant returned to the city employees parking lot and placed a plastic bag containing an unknown object into his truck. Defendant also went into two banks. During some of this time, he was accompanied by one or two females.

On the afternoon of September 5, all the foregoing information was relayed to Redondo Police Sergeant Donald Baird. He summoned defendant to his office where he and Lieutenant Sprengel briefly spoke with him. Sergeant Baird arrested defendant for grand theft and requested permission to search his personal vehicle. Defendant refused permission but relinquished his keys. Thirty to forty-five minutes later, Sergeant Baird went to defendant's truck which was located approximately one hundred fifty to two hundred yards from the place of his detention. He found the truck unlocked, entered it, and removed, among other things, two canvas bags of quarters contained in a plastic grocery bag under a jacket.

After being bound over for trial, defendant moved to suppress the canvas bags and their contents as well as other evidence found in his truck. He argued that his distance from the search and the lapse of time from his arrest as well as the ability of the police to secure his vehicle required they obtain a warrant before conducting their search. Respondent court accepted the latter contention, invalidating the search because the truck "was not going anyplace" and reasoning that as defendant did not have access to his vehicle and the police had time and opportunity to secure a warrant, their failure to do so required suppression.

---

[1] Lieutenant Sprengel initially received information that someone identified as a parking enforcement person was seen going into a bank carrying what appeared to be bags of money and depositing them into his own account. Bank personnel identified defendant as the depositor and provided the additional information as to the type and frequency of his deposits.

The People petitioned for a peremptory writ of mandate reversing this order. (Pen. Code, § 1538.5, subd. (o).) We informed the parties of our intention to issue a peremptory writ in the first instance; and defendant has filed a response on the merits. (See *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893].)

ISSUE PRESENTED

The sole issue presented is whether the warrantless search of defendant's truck violated his Fourth Amendment rights as his vehicle was immobilized away from his presence and under police surveillance.

DISCUSSION

In granting suppression, the trial court ruled as a matter of law that the search was invalid because defendant was in custody and his vehicle immobilized. ■ Review of a motion pursuant to Penal Code section 1538.5 normally accords great deference to the trial court's ruling, but only as to findings of fact. (See *People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].) "[A] trial court's determination will not be sustained under the general rule where it appears that its decision was based upon an erroneous legal theory absent which it is unlikely that it would have reached the conclusion it did. [Citations.]" (*People* v. *Manning* (1973) 33 Cal.App.3d 586, 603 [109 Cal.Rptr. 531].) ■ Under the analysis which follows, we find that the order of suppression resulted from an incorrect application of the automobile exception to the Fourth Amendment warrant requirement and that the facts supported a valid search.

■ The automobile exception has its genesis in *Carroll* v. *United States* (1925) 267 U.S. 132 [69 L.Ed. 543, 45 S.Ct. 280, 39 A.L.R. 790], which established that "a search [of a motor vehicle] is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained. [Fn. omitted.]" (*United States* v. *Ross* (1982) 456 U.S. 798, 809 [72 L.Ed.2d 572, 584, 102 S.Ct. 2157].) This exception derives principally from "(1) the ready mobility of automobiles, (2) the lesser expectation of privacy in their contents, [and] (3) the significant administrative expense, delay and risk of loss of contents entailed in requiring the police either to secure all automobiles at the scene or to tow all suspected vehicles to a securely maintained depot . . . . [Citations.]" (*People* v. *Superior Court (Valdez)* (1983) 35 Cal.3d 11, 16 [196 Cal.Rptr. 359, 671 P.2d 863]; see *United States* v. *Ross, supra,* 456 U.S. at pp. 806-807 [72 L.Ed.2d at pp. 582-583].)

■ Application of this exception is not contingent upon whether the particular automobile could actually be moved at the time of the search.

Rather, the inherent mobility of any moving vehicle "creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible." (*South Dakota* v. *Opperman* (1976) 428 U.S. 364, 367 [49 L.Ed.2d 1000, 1004, 96 S.Ct. 3092].) "It is thus clear that the justification to conduct such a warrantless search does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant. [Citation, fn. omitted.]" (*Michigan* v. *Thomas* (1982) 458 U.S. 259, 261 [73 L.Ed.2d 750, 753, 102 S.Ct. 3079]; see *Chambers* v. *Maroney* (1970) 399 U.S. 42, 51-52 [26 L.Ed.2d 419, 428-429, 90 S.Ct. 1975]; *People* v. *Chavers* (1983) 33 Cal.3d 462, 468-469 [189 Cal.Rptr. 169, 658 P.2d 96].) "The decisions upholding warrantless searches of automobiles evidence no distinction between the treatment of vehicles the police stop on the highway and vehicles they find parked at the curb." (*People* v. *Dumas* (1973) 9 Cal.3d 871, 883 [109 Cal.Rptr. 304, 512 P.2d 1208].) ■ Accordingly, the dispositive inquiry in a motion to suppress evidence found in an auto search is whether the objective facts demonstrate the "officers ha[d] probable cause to believe that the vehicle contain[ed] contraband." (*United States* v. *Ross, supra,* 456 U.S. at pp. 807-809 [72 L.Ed.2d at pp. 582-583]; see *California* v. *Carney* (1985) 471 U.S. 386, 392 [85 L.Ed.2d 406, 413-414, 105 S.Ct. 2066].)

■ In light of the foregoing considerations, we find the warrantless search of defendant's truck satisfied the constitutional standard of reasonableness. Defendant did not contend the police lacked probable cause to justify the search they conducted. In fact, at oral argument he explicitly conceded this issue. Nor did he contend that the scope of the search exceeded that which a magistrate could have authorized. Defendant objected to the failure to secure a warrant only because he was in custody and removed from the area of the search, the officers had taken his keys, and the vehicle was under their control. The trial court agreed, analogizing to cases invalidating warrantless house searches when the premises could have been secured and a warrant obtained. (See, e.g., *Vale* v. *Louisiana* (1970) 399 U.S. 30, 34 [26 L.Ed.2d 409, 413, 90 S.Ct. 1969].)

"But as *Carroll, supra,* held, for the purposes of the Fourth Amendment there is a constitutional difference between houses and cars."[2] (*Chambers* v.

---

[2] The United States Supreme Court has recently emphasized this conclusion in upholding the warrantless intrusion in *California* v. *Carney, supra,* 471 U.S. 386. In *Carney,* the vehicle searched was "a fully mobile 'motor home' located in a public place." (*Id.,* at p. 387 [85 L.Ed.2d at p. 411].) Despite the fact that "it was *capable of functioning as a home*" (*id.,* at p. 393 [85 L.Ed.2d at p. 414]), the search was constitutionally permissible because the motor home remained mobile and its operation in a public place reduced the owner's expectation of

*Maroney, supra,* 399 U.S. at p. 52 [26 L.Ed.2d at p. 429].) A warrantless automobile search does not require any additional "exigent circumstances."[3] (*United States* v. *Johns* (1985) 469 U.S. 478, 484 [83 L.Ed.2d 890, 897, 105 S.Ct. 881]; *Michigan* v. *Thomas, supra,* 458 U.S. at p. 262 [73 L.Ed.2d at p. 753].) Thus, the fact that defendant was under arrest and had no immediate access to his truck is immaterial in determining the validity of the search.[4] "While it may well have been possible for the police . . . simply to have seized the vehicle and to have postponed a search of [it] until after a warrant had been obtained, a prompt on-the-scene warrantless search of the [truck] does not violate the state or federal Constitutions. [Citation.]"[5] (*People* v. *Superior Court (Valdez), supra,* 35 Cal.3d at p. 16.)

---

privacy. (*Id.,* at pp. 393-394 [85 L.Ed.2d at pp. 414-415].) The court enunciated no new principles of search and seizure law and relied substantially upon *Carroll* v. *United States, supra,* 267 U.S. 132, for its rationale, thus clearly focusing the justification for the automobile exception on the factors of mobility and reduced expectation of privacy without consideration for the defendant's physical or temporal proximity to the search. (See, e.g., *Florida* v. *Meyers* (1984) 466 U.S. 380, 381-382 [80 L.Ed.2d 381, 383-384, 104 S.Ct. 1852].)

[3] We do not uphold the instant search upon a finding that the facts established sufficient additional exigent circumstances to justify the intrusion. Nevertheless, we observe the record to contain some significant evidence on this point. At least one member of the surveillance team observed defendant accompanied by one or two females as he made his rounds and when he deposited coins at the bank. The identity and relationship of these women remained unknown at the time of the search. The possibility that they were confederates and could have access to defendant's truck or its contents was sufficient under the circumstances to justify an immediate search. (See, e.g., *People* v. *Dumas, supra,* 9 Cal.3d at p. 885.)

[4] In arguing for suppression in the trial court and now on review, defendant places great emphasis upon his distance from his vehicle and the lapse in time between his arrest and the search. This portion of his argument tends to confuse the considerations bearing on the constitutionality of a search incident to an arrest and an automobile search. Because of its significant intrusiveness, the permissible scope of a search incident to arrest is narrowly circumscribed by the considerations underlying its rationale, i.e., for officer safety and to prevent the destruction of evidence or the fruits of a crime. (See generally *Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034].) However, "the search of an auto on probable cause proceeds on a theory wholly different from that justifying the search incident to an arrest: 'The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law.' [Citation.]" (*Chambers* v. *Maroney, supra,* 399 U.S. at p. 49 [26 L.Ed.2d at p. 427], citing *Carroll* v. *United States, supra,* 267 U.S. at pp. 158-159 [69 L.Ed. at pp. 553-554].) For this reason, defendant's reliance upon *United States* v. *Vasey* (9th Cir. 1987) 834 F.2d 782, is misplaced. That case involved only the "search incident to arrest" exception to the warrant requirement.

[5] In light of the facts, we find defendant's continuing reliance on *Coolidge* v. *New Hampshire* (1971) 403 U.S. 443 [29 L.Ed.2d 564, 91 S.Ct. 2022], *United States* v. *Chadwick* (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476], and *Arkansas* v. *Sanders* (1979) 442 U.S. 753 [61 L.Ed.2d 235, 99 S.Ct. 2586], inapposite, since those decisions were resolved on very different facts. In *Coolidge,* the police searched the defendant's vehicle pursuant to a warrant later ruled invalid; and the Supreme Court found no basis for upholding a warrantless search. (*Coolidge* v. *New Hampshire, supra,* 403 U.S. at pp. 449-453 [29 L.Ed.2d at pp. 572-575].) In reaching the latter conclusion, the court suggested that even under the automobile exception articulated in *Carroll,* the warrant requirement should not be relaxed if law enforcement have

Accordingly, we conclude that the trial court erred in suppressing the evidence found in defendant's truck.

## DISPOSITION

Let a peremptory writ of mandate issue.

Danielson, Acting P. J., and Croskey, J., concurred.

---

time and opportunity to obtain one before searching. (*Id.,* at pp. 458-462 [29 L.Ed.2d at pp. 578-580].)

In support of the ruling below, defendant has isolated certain language in *Coolidge* and argued that once a vehicle has been immobilized, any subsequent search must be pursuant to a warrant. (See, e.g., *id.,* at pp. 462-464 [29 L.Ed.2d at pp. 580-582].) We need not dwell on the current viability of these pronouncements in light of *Ross* since the plurality opinion in *Coolidge* is not binding on this court. (See *North* v. *Superior Court* (1972) 8 Cal.3d 301, 307-308 [104 Cal.Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155].) And defendant offers no authority or rationale for departing from the most recent expression of controlling principles.

With respect to *Chadwick* and *Sanders,* the Supreme Court discussed both these decisions in *United States* v. *Ross, supra,* 456 U.S. at pages 809-817, 824 [72 L.Ed.2d at pages 583-589, 593], reiterating and clarifying that in each of those cases the automobile exception did not excuse the failure to obtain a warrant because the police had probable cause to search only a container within the vehicle and not the vehicle itself: "[T]he mere fact that the suitcase had been placed in the trunk of the vehicle did not render the automobile exception of Carroll applicable; the police had probable cause to seize the suitcase before it was placed in the trunk of the cab and did not have probable cause to search the taxi itself." (*Id.,* at pp. 812-813 [72 L.Ed.2d at p. 586], fn. omitted.) "[I]n neither Chadwick nor Sanders did the police have probable cause to search the vehicle or anything within it except the footlocker in the former case and the green suitcase in the latter." (*Id.,* at p. 814 [72 L.Ed.2d at p. 587].) The court then made clear the continuing vitality of the automobile exception when circumstances known to law enforcement establish probable cause to search a vehicle for contraband and/or evidence, rejecting portions of the reasoning in *Sanders* and *Robbins* v. *California* (1981) 453 U.S. 420 [69 L.Ed.2d 744, 101 S.Ct. 2841], to the extent they led to inconsistent results. (*United States* v. *Ross, supra,* 456 U.S. at p. 824 [72 L.Ed.2d at p. 593].)

Defendant conceded both in answer to the petition and at oral argument that the officers had probable cause to search his truck. Accordingly, as we have explained above, this case falls squarely within the automobile exception to the Fourth Amendment warrant requirement as most recently articulated in *United States* v. *Ross, supra.*