Filed 10/29/14  Kennedy v. Super. Ct. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DWIGHT COREY KENNEDY,<br><br>     Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF ALAMEDA COUNTY,<br><br>     Respondent;<br><br>THE PEOPLE,<br><br>     Real Party in Interest. | A140199<br><br><br>(Alameda County<br>Super. Ct. No. H53381) |

Petitioner Dwight Corey Kennedy challenges a number of warrantless searches and seizures that took place after he was arrested for driving on a suspended license.  He contends that warrantless searches of his vehicle and cell phone were unlawful, and he argues that a protective sweep of his home before a search warrant issued was not justified by officer safety or exigent circumstances.

We conclude that the odor of unburned marijuana furnished probable cause to search petitioner's vehicle under the automobile exception to the warrant requirement. We also conclude that, although the United States Supreme Court has since held that police generally may not search the contents of a cell phone without a warrant (*Riley v. California* (2014) 573 U.S. __, __ [134 S.Ct. 2473, 2485] (*Riley*)), the search in this case was conducted in objectively reasonable reliance on binding California precedent in effect at the time.  Consequently, the evidence seized from the cell phone falls within the

1

good faith exception to the exclusionary rule. In addition, because there was probable cause to support the issuance of a search warrant for petitioner's residence even without considering evidence uncovered during the warrantless protective sweep of that residence, it is unnecessary to consider whether officers acted lawfully in conducting the warrantless sweep. Accordingly, we deny the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

### Procedural History

The Alameda County District Attorney filed a seven-count information in February 2013 charging petitioner with possession of methamphetamine while armed with a loaded gun (Health & Saf. Code, § 11370.1, subd. (a)), possession of methamphetamine for sale (Health & Saf. Code, § 11378), two counts of the sale or transportation of marijuana (Health & Saf. Code, § 11360, subd. (a)), two counts of possession of marijuana for sale (Health & Saf. Code, § 11359), and cultivation of marijuana (Health & Saf. Code, § 11358). The first five counts of the information arose from events that occurred on August 5, 2011, while counts six and seven arose from events taking place on March 29, 2012.

After the information was filed, petitioner moved to suppress evidence seized during warrantless searches and seizures that took place in August 2011 and March 2012. The trial court denied the suppression motion.

Petitioner filed a writ petition in this court challenging the denial of his suppression motion. The writ petition challenges the denial only as it relates to warrantless searches and seizures that occurred in August 2011. We issued a stay as well as an order to show cause why the petition should not be granted. While the petition was pending, we directed the parties to submit supplemental briefing on the effect of the decision of the United States Supreme Court in *Riley, supra,* 134 S.Ct. 2473, which addresses whether warrantless cell phone searches incident to an arrest are lawful.

### Facts

On August 5, 2011, at around 7:30 p.m., Alameda County Sheriff's Deputy Michael Dalisay saw petitioner drive into the parking lot of a liquor store in San Leandro.

2

There was no one else in the car with petitioner. Petitioner parked in front of the store. His car occupied two parking spaces in the store's parking lot. Deputy Dalisay recognized petitioner from two previous encounters in which petitioner had been arrested. The deputy recalled that one of the previous encounters occurred earlier in 2011. Deputy Dalisay knew that petitioner's criminal behavior consisted of driving with a suspended license and reckless driving, but he did not know why petitioner's license had been suspended. Before making any contact with petitioner, Deputy Dalisay checked to see if petitioner had a suspended license by contacting dispatch. The deputy had no reason to believe petitioner was armed or that he was involved in any drug-related activity.

Deputy Dalisay and another officer, Sergeant Schuler, waited until petitioner left the liquor store before approaching him. Sergeant Schuler walked to the driver's side of the vehicle as petitioner opened the door while Deputy Dalisay approached from the passenger side. Deputy Dalisay smelled a "very strong odor" of unburned marijuana coming from the inside of petitioner's vehicle. The sergeant spoke first and asked petitioner for his driver's license. Petitioner was upset and protested that he had never been arrested before. After further discussion and another request for petitioner's license, petitioner produced a California identification card but not a driver's license. Petitioner's identification showed that he resided at 573 Empire Street in San Lorenzo (hereafter "573 Empire"). It was later determined that 573 Empire was the home of petitioner's mother, Lisa Romero.

Sergeant Schuler placed petitioner in handcuffs. The deputy confirmed that petitioner's license was suspended and told petitioner that he was under arrest for driving on a suspended license in violation of Vehicle Code section 14601.1. Petitioner was in handcuffs for about five minutes before being placed under arrest.

The officers performed a search of petitioner's vehicle. They found packages of marijuana in a storage compartment located in the driver's door as well as a cell phone in the same area. The marijuana was packaged in two clear baggies that were tied at the top. One baggie contained about two grams of marijuana while the other contained 15 grams. The officers also found empty Ziploc baggies in the trunk. The vehicle's

3

registration, which was recovered during the search, revealed that the car was registered to petitioner's mother at 573 Empire.

Deputy Dalisay claimed there were two grounds for conducting the vehicle search. First, he believed there was probable cause to search based upon the strong smell of marijuana emanating from the interior. Second, he testified that the search was conducted to inventory the vehicle's contents. Deputy Dalisay stated that the sheriff's department has a written policy concerning inventory procedures and that he had been trained in that process. He believed the vehicle was parked illegally because it occupied two spaces. He felt it was necessary to impound and tow the vehicle because it was purportedly parked illegally and because there was no one else available to take possession of the car. He also testified that the car was parked in a high crime area and that he was concerned the car or its contents would be at risk of theft or vandalism if left at the liquor store. Deputy Dalisay acknowledged that no attempt had been made to contact the vehicle's owner, Romero, before it was towed.

Following petitioner's arrest for driving with a suspended license, officers conducted a search of his person.[1] They recovered a cell phone from his pants pocket as well as $5,941 in cash. Petitioner claimed he had earned the cash while working for a moving company. A few minutes after retrieving the cell phone, Deputy Dalisay began looking at its contents. One thing that caught his attention was a series of text messages from the previous day. One text message was from someone identified as "Rooser" and

---

[1]The precise order in which events transpired after the deputy first observed petitioner is not entirely clear from the testimony presented at the suppression hearing. According to a statement made by defense counsel at the suppression hearing, officers first arrested petitioner for driving on a suspended license, then searched the vehicle, and then searched his person. This sequence is consistent with the deputy's testimony and does not appear to be disputed.

4

read, "I am going to need a [whole one] in a min."[2] A responsive text message read, "I will be there in a min."

Deputy Dalisay knew from his experience in law enforcement that a "whole one" on the street refers to one ounce of an illicit drug. He concluded that the phone recovered from petitioner served as the means for communicating with potential buyers. Deputy Dalisay testified that he had been involved in over 100 marijuana sales cases in the seven years he had been in the sheriff's department.

Petitioner requested on several occasions to call his mother at her residence. He also asked if he could call his mother from jail. Deputy Dalisay did not allow him to call because he was concerned that evidence of drug sales could be discarded quickly if someone at the residence were alerted to petitioner's arrest. Petitioner appeared nervous and agitated when he was denied the right to call his mother. Based upon his past experience, Deputy Dalisay believed there would be further evidence relating to drug sales at a suspected drug trafficker's residence, including more drugs, money, and items such as scales.

In discussions with other officers at the liquor store where petitioner was arrested, Deputy Dalisay concluded there was probable cause to obtain a search warrant for 573 Empire. Nevertheless, even before a search warrant had been prepared, Deputy Dalisay and other officers drove to the mother's house in San Lorenzo with the intention of searching the residence for evidence of drug sales. He explained that there were two reasons he went to 573 Empire before obtaining a search warrant. First, he was concerned that petitioner might have access to a phone and direct someone to dispose of evidence at that address before a search warrant could be obtained. Second, the time and trouble of securing a search warrant at night could be avoided if the owner of 573 Empire would give consent to search the residence.

---

[2]The transcript actually refers to a "hole-in-one" but the transcription appears to be incorrect. Based upon the context of the testimony as well as other references in the record to the content of the text message, it is apparent the text message referred to a "whole one" and not to a "hole-in-one."

Upon arriving at 573 Empire, Deputy Dalisay observed two cars parked outside the residence. Petitioner's mother, Romero, answered the door after officers knocked and announced themselves as "Sheriff's Office." Romero came outside and locked the door behind her. When she was asked if petitioner lived with her, she initially said yes but then paused and gave an equivocal response, saying, "He comes and goes." Deputy Dalisay asked Romero if anyone else was in the house. She did not give a clear answer but instead said she did not think so. She avoided eye contact with the deputy during the exchange. Romero denied consent to search the house.

Deputy Dalisay testified that he had several concerns about the situation. He feared there could be weapons in the house or that somebody in the residence might destroy evidence. He did not know whether anyone else was in the house and did not hear any noises from inside, but he felt that Romero's actions were suspicious. Among other things, the presence of multiple vehicles at the residence, Romero's ambiguous responses, and her decision to lock the door behind her before talking with sheriff's deputies caused him concern.

The officers conducted a protective sweep of the residence. The stated purpose of the sweep was to check the interior solely for persons that might pose a threat to officers once they had a signed search warrant for the residence. While Deputy Dalisay was inside the residence, Romero pointed out petitioner's room, which was locked. Romero gave the deputy a key to the room and he entered. Inside the room, Deputy Dalisay saw a black pistol lying on a pillow on the bed. He rendered the gun safe by removing the magazine and locking the slide but otherwise left the gun where he found it. He was in the house less than five minutes and did not look in any containers or underneath anything during the protective sweep.

It was only after Deputy Dalisay conducted the protective sweep that a detective left to prepare a search warrant. As support for the search warrant, the detective recited the evidence recovered from petitioner, including the cash and the text message found on his cell phone, as well as the evidence recovered from the vehicle, including the

6

marijuana and the empty Ziploc bags. The search warrant also recited the fact that officers had found a gun in petitioner's bedroom at 573 Empire.

A search warrant for 573 Empire was issued around midnight. A search of the residence pursuant to the warrant found methamphetamine, ecstasy, a scale, a gun, two mature marijuana plants, and a large bag containing marijuana, among other items. The evidence seized at 573 Empire supported the first five counts of the seven-count information against petitioner.

## DISCUSSION

### 1.      *Standard of Review*

"In reviewing a trial court's ruling on a motion to suppress evidence, we defer to that court's factual findings, express or implied, if they are supported by substantial evidence. [Citation.] We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment." (*People v. Lenart* (2004) 32 Cal.4th 1107, 1119.)

### 2.      *Initial Detention*

Petitioner contends he was handcuffed at the outset of his interaction with the sheriff's deputies without any objective justification for the restraint. He claims there were no specific, articulable, objective facts that would cause an officer to suspect he was engaged in any criminal activity. Notably, petitioner does not challenge the initial request for identification—which preceded the handcuffing—other than to make a belated and legally unsupported claim in his reply brief that he complied with the "unlawful demand for identification."

The Fourth Amendment is not implicated when an officer asks to see an individual's identification card. (*People v. Leath* (2013) 217 Cal.App.4th 344, 353.) It is only when the totality of the circumstances establish that the individual is not free to leave that the encounter is transformed into a detention. (See *ibid.*) In this case, while there may be grounds to believe that petitioner did not feel free to leave when first asked for his driver's license, petitioner does not make a factual or legal argument to support a claim that the initial request for identification amounted to an illegal detention. In ruling

7

against petitioner, the trial court impliedly rejected the contention that petitioner was unlawfully detained when the deputies first encountered him. Petitioner has provided no reason for us to reject that conclusion.

At the point petitioner was placed in handcuffs, he had failed to produce a driver's license despite his apparent intent to drive away, and Deputy Dalisay had smelled a very strong odor of marijuana emanating from petitioner's vehicle. Under the circumstances, the deputies were justified in detaining petitioner to investigate further. (See *People v. Strasburg* (2007) 148 Cal.App.4th 1052, 1059–1060 (*Strasburg*).)

We agree with petitioner that there appears to have been no justification for being placed in handcuffs while the deputies waited for dispatch to confirm the status of petitioner's driver's license. The record does not suggest the deputies had any reason to believe petitioner was armed or dangerous. Nevertheless, petitioner has not established that any subsequently discovered evidence was the product of his handcuffing. The deputies did not conduct the search of petitioner's vehicle or the search of his person until after he was lawfully placed under arrest for driving with a suspended license. Consequently, even if the handcuffing amounted to a constitutional violation, its connection to any evidence recovered from petitioner, the vehicle, or his residence is too attenuated to apply the exclusionary rule to that evidence. (*People v. Durant* (2012) 205 Cal.App.4th 57, 65.) Therefore, the allegedly illegal handcuffing of petitioner does not support suppressing evidence obtained after he was lawfully placed under arrest.

**3.     *Search of Petitioner's Vehicle***

Petitioner contends the search of his vehicle was illegal. He first argues it was not a valid search incident to arrest under *Arizona v. Gant* (2009) 556 U.S. 332 (*Gant*), in which the United States Supreme Court held that an arrest for a traffic violation generally does not justify a search of an arrestee's vehicle absent genuine safety or evidentiary concerns. (*Id.* at pp. 346–347.) We agree with petitioner that, without more, merely being arrested for driving with a suspended license did not justify a search of the vehicle incident to petitioner's arrest. The Attorney General does not dispute this conclusion.

8

Petitioner next contends the "supposed" smell of marijuana did not constitute probable cause to support a warrantless search of the vehicle. Finally, he argues that the warrantless search was not justified as an inventory search.

As explained in more detail below, we conclude that the odor of unburned marijuana provided probable cause for a warrantless search of the vehicle. Before addressing the legal support for this conclusion, we simply note that we are bound by the trial court's implied finding that Deputy Dalisay detected a very strong smell of marijuana emanating from the vehicle. Although petitioner seems to question whether the deputy could actually smell marijuana in light of the small amount that was recovered from the vehicle, the deputy's testimony constitutes substantial evidence supporting the implied finding. (See *People v. Lenart, supra,* 32 Cal.4th at p. 1119.)

## A. Probable Cause

"The Fourth Amendment generally requires police to secure a warrant before conducting a search." (*Maryland v. Dyson* (1999) 527 U.S. 465, 466.) As recognized by the United States Supreme Court as early as 1925, "there is an exception to this requirement for searches of vehicles." (*Ibid.*) Under established precedent, "the 'automobile exception' has no separate exigency requirement." (*Ibid.*) " 'If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more.' " (*Id.* at p. 467.)

The decisions that uphold warrantless searches under the automobile exception do not distinguish between vehicles that have been stopped on the highway and those parked at the curb. (See *People v. Superior Court* (*Overland*) (1988) 203 Cal.App.3d 1114, 1119.) Consequently, "the dispositive inquiry in a motion to suppress evidence found in an auto search is whether the objective facts demonstrate the 'officers ha[d] probable cause to believe that the vehicle contain[ed] contraband.' " (*Ibid.*) If probable cause exists, the officers may conduct a thorough warrantless search of the vehicle. (*United States v. Ross* (1982) 456 U.S. 798, 825.) The probable cause standard "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." (*Illinois v. Gates* (1983) 462 U.S. 213, 243, fn. 13.)

9

"California courts have concluded the odor of unburned marijuana . . . may furnish probable cause to search a vehicle under the automobile exception to the warrant requirement." (*People v. Waxler* (2014) 224 Cal.App.4th 712, 719 (*Waxler*); see *Strasburg, supra,* 148 Cal.App.4th at p. 1059.)   Under established California law, the deputies in this case had probable cause to search petitioner's vehicle as a result of detecting a strong odor of marijuana.  Petitioner advances a number of arguments why we should not apply this longstanding precedent in his case.  His arguments lack merit, as we explain.

Petitioner first suggests the automobile exception should not apply here because his vehicle was not "readily mobile."  Presumably, petitioner's point is that the vehicle was not mobile because there was no one else to drive the vehicle away after he was placed under arrest.  The contention is meritless.  Ready mobility is not the sole basis for the exception to the warrant requirement.  (*California v. Carney* (1985) 471 U.S. 386, 390. )  The exception is also based upon a lesser expectation of privacy in one's vehicle as opposed to one's home.  (*Id.* at p. 391.)  Further, the application of the automobile exception "is not contingent upon whether the particular automobile could actually be moved at the time of the search."  (*People v. Superior Court* (*Overland*), *supra,* 203 Cal.App.3d at p. 1118.)

Petitioner next argues that the odor of marijuana does not provide probable cause for a warrantless vehicle search in light of the recent "decriminalization" of the possession of small amounts of marijuana.  Under Health and Safety Code section 11357, subdivision (b), the possession of 28.5 grams or less of marijuana is punishable as an infraction.  A person who possesses more than 28.5 grams of marijuana is guilty of a misdemeanor.  (Health & Saf. Code, § 11357, subd. (c).)  Petitioner also points out that certain individuals who transport or process marijuana intended for personal medical use

10

may be immune from prosecution for drug-related offenses.[3]  (See *People v. Mentch* (2008) 45 Cal.4th 274, 291.)

Therefore, according to petitioner, the mere fact that officers detect the odor of marijuana does not provide probable cause to believe that contraband is present or that a crime has been committed.  Petitioner relies in part upon a decision of the Supreme Judicial Court of Massachusetts in *Commonwealth v. Cruz* (2001) 459 Mass. 459 (*Cruz*).  In *Cruz,* the Massachusetts court concluded that the odor of burned marijuana alone did not justify a warrantless vehicle search because the state had changed the possession of one ounce or less of marijuana from a criminal to a civil violation.  (*Id.* at pp. 471–472.)  The court reasoned that the mere smell of marijuana did not give rise to suspicion of a "criminal offense."  (*Id.* at p. 469.)

California courts have considered and rejected petitioner's claims.  In *Strasburg, supra,* 148 Cal.App.4th at pages 1059 to 1060, the court rejected the notion that probable cause for a search is lacking when marijuana odor is present and the defendant possesses a physician's recommendation for medical marijuana or a state-issued medical marijuana card.  The court reasoned that the medical marijuana laws provide a "limited immunity— not a shield from reasonable investigation."  (*Id.* at p. 1060.)  An officer with probable cause to search is entitled to "determine whether the subject of the investigation is in fact possessing the marijuana for personal medical needs, and is adhering to the eight-ounce limit on possession."  (*Ibid.*)

In *Waxler, supra,* 224 Cal.App.4th at page 725, the court held that "[t]he automobile exception is not limited to situations where the officer smells or sees more than 28.5 grams of marijuana in the vehicle [citation]; the observation of any amount of marijuana . . . establishes probable cause to search pursuant to the automobile exception."  The *Waxler* court specifically declined to follow the Massachusetts court in *Cruz* and

---

[3]In this case, Deputy Dalisay testified that he could not recall asking petitioner whether he used marijuana for medical purposes.  There is no evidence in the record suggesting that petitioner had a state-issued medical marijuana card or a physician's recommendation for medical marijuana.

11

explained its reasoning as follows: "*Cruz* does not apply here for at least two reasons. First, in contrast to Massachusetts, possession of up to an ounce of nonmedical marijuana in California is a 'crime.' (Pen. Code, § 16.) Second, neither the California Supreme Court nor the United States Supreme Court has limited the automobile exception to situations where the defendant possesses a '*criminal* amount of contraband.' " (*Waxler*, *supra,* at p. 723.) Petitioner has presented no compelling grounds for this court to depart from the holdings in *Strasburg* or *Waxler*.

Petitioner also relies on *People v. Torres* (2012) 205 Cal.App.4th 989 and *People v. Hua* (2008) 158 Cal.App.4th 1027. His reliance is misplaced. In *People v. Hua,* the court held that officers could not enter an apartment without a warrant even though they smelled burned marijuana and had observed an occupant of the apartment smoking what appeared to be a marijuana cigarette. (*People v. Hua, supra,* at pp. 1033–1034.) Likewise, in *People v. Torres,* the court held that officers lacked probable cause to enter a hotel room without a warrant based simply on the smell of marijuana. (*People v. Torres, supra,* at p. 992.) As the court explained in *Waxler, supra,* at page 725: "Neither *Hua* nor *Torres* assists appellant because those cases concerned warrantless entry into a dwelling and the application of the exigent circumstances doctrine to minor, nonjailable offenses. 'The automobile exception to the warrant requirement does not require a showing of exigent circumstances.' " For purposes of a Fourth Amendment analysis, physical entry into the home is fundamentally different from the search of a vehicle. (*Ibid.*)

Finally, petitioner contends that there is no "plain smell" exception to the warrant requirement akin to the "plain view" exception. (See *Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1244 (conc. opn. of Liu, J.) [describing plain view doctrine as one allowing officer to seize incriminating object in plain view].) As petitioner correctly observes, in *Robey v. Superior Court, supra,* 56 Cal.4th at page 1222, our Supreme Court specifically declined to address whether there is a "plain smell" exception to the warrant requirement. Regardless of whether the "plain smell" of contraband generally justifies a warrantless search, the issue in this case is limited to the context of a vehicle search,

12

where the law is settled. In a concurring opinion in *Robey v. Superior Court,* Justice Goodwin Liu expressed the view that the smell of contraband does not supply the same justification for a seizure as the observation of contraband. (*Id.* at p. 1253.) Nevertheless, Justice Liu clarified that his concerns about a "plain smell" doctrine "cast no doubt on the settled proposition that the smell of marijuana can establish probable cause to search and, in the context of an *automobile search* or exigent circumstances, can provide a sufficient basis to proceed without a warrant." (*Id.* at p. 1254, italics added.) Here, of course, we are concerned with a search justified by the automobile exception to the warrant requirement. Even if we were to reach the issue of whether there is a generalized "plain smell" exception to the warrant requirement, there is no reason to believe that our resolution of that issue would have any bearing upon longstanding precedent establishing that the smell of marijuana supplies probable cause to search a vehicle.

Accordingly, we conclude the search of the vehicle was lawful because the strong smell of unburned marijuana provided probable cause for the search.

### B.    Inventory Search

Petitioner argues that the vehicle search was not justified as an inventory search. We tend to agree with petitioner that there are many problematic aspects to the claim that the deputies impounded the vehicle for purposes of an inventory search. Among other things, deputies conducted a search of the vehicle apparently before even learning the identity of the registered owner, who lived nearby. In addition, one of the main reasons the deputy chose to impound the vehicle was because it was purportedly parked illegally across two spaces in a private parking lot. Yet, the law relied upon by the deputy does not even apply to a vehicle parked in a private lot. (See Veh. Code, § 21113, subd. (a) [addressing vehicles parked at public facilities such as parks and schools].) Further, even if the car was parked in a high crime area—a fact that was not elicited until the prosecutor asked leading questions of the deputy upon redirect examination—the deputy would still need to follow standard procedures to decide whether to impound the vehicle.

13

Here, there was no effort to set forth any such standard procedures or establish that the deputy complied with those procedures.

Nevertheless, because we conclude the search was lawful under the automobile exception to the warrant requirement, we need not resolve these issues.

**4.** *Search of Cell Phone Contents*

Petitioner argues that the warrantless search of his cell phone was illegal. He primarily argues that there was no reason to believe that the phone would contain any evidence bearing upon the crime for which he was arrested.

After we issued an order to show cause in this case, the United States Supreme Court held that, absent an emergency, law enforcement must secure a warrant before searching the digital contents of a cell phone. (*Riley, supra,* 134 S.Ct. at p. 2485.) We permitted the parties to file supplemental briefs addressing the effect on this case, if any, of the United States Supreme Court's decision in *Riley*.

After considering the parties' supplemental briefs, we reach the following conclusions, which we expound upon below. First, the decision in *Riley* is retroactive. Second, notwithstanding our conclusion that *Riley* is retroactive, the evidence retrieved from the phone is properly considered under the good faith exception to the exclusionary rule. The exception applies because the search was conducted in objectively reasonable reliance on binding California precedent in effect at the time, *People v. Diaz* (2011) 51 Cal.4th 84 (*Diaz*).

We begin with the retroactivity issue because we can disregard *Riley* if it does not apply retroactively. Neither party directly addressed the issue but we will assume the Attorney General concedes that the decision is retroactive in light of the fact the supplemental brief submitted by the Attorney General focuses on the good faith exception to the exclusionary rule. Plainly, there would be no need to fall back on the good faith exception to the exclusionary rule if *Riley* were inapplicable. Further, United States Supreme Court decisions construing the Fourth Amendment are applied retroactively to all cases in which a conviction is not yet final as of the date of the decision. (*United States v. Johnson* (1982) 457 U.S. 537, 562.) The high court adopted

14

the view "that newly announced rules of constitutional criminal procedure must apply 'retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception.' " (*Davis v. United States* (2011) __ U.S. __, __ [131 S.Ct 2419, 2430] (*Davis*).) Accordingly, we conclude that the holding in *Riley* is retroactive. (See *United States v. Spears* (N.D.Tex., Jul. 14, 2014, No. 4:14–cr–82–O) 2014 U.S.Dist. Lexis 94968 [holding that *Riley* applies retroactively].)

Under *Riley,* the warrantless search of the cell phone was unlawful. However, this conclusion does not end the inquiry because "the retroactive application of a new rule of substantive Fourth Amendment law *raises* the question whether a suppression remedy applies; it does not answer that question." (*Davis, supra,* 131 S.Ct. at p. 2431.) The question of whether to suppress the evidence turns on the application of the exclusionary rule and the good faith exception to that rule.

The exclusionary rule generally forbids the use of improperly obtained evidence at trial. (*Herring v. United States* (2009) 555 U.S. 135, 139.) The exclusionary rule "operates as a 'judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.' " (*United States v. Leon* (1984) 468 U.S. 897, 906 (*Leon*).) In *Leon,* the United States Supreme Court held that when an officer relies in good faith on a search warrant that is later determined to be invalid the exclusionary rule does not apply. (*Id.* at p. 922.) The court reasoned that suppressing the evidence would not serve the purpose of the exclusionary rule in deterring police misconduct because there is no police misconduct and thus nothing to deter when the officer relies in good faith on the issuance of a search warrant. (*Id.* at pp. 920–921.)

In *Davis, supra,* 131 S.Ct. 2419, the United States Supreme Court extended the *Leon* good faith exception to searches performed in accordance with a binding decision of an appellate court. The court held "that searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." (*Id.* at pp. 2423–2424.)

Here, at the time the vehicle search was conducted, the search was authorized by the California Supreme Court decision in *Diaz, supra,* 51 Cal.4th 84. In *Diaz,* our Supreme Court held that a warrantless search of the digital contents of a cell phone is lawful when the search is performed incident to an arrest. (*Id.* at p. 101.) Although *Diaz* is no longer good law in light of the United States Supreme Court's decision in *Riley,* it was binding precedent in California at the time of the search in this case. Deputy Dalisay acted in objectively reasonable reliance on *Diaz* in conducting the search. Consequently, the good faith exception precludes application of the exclusionary rule that would otherwise result in the suppression of the evidence recovered from the phone.

Petitioner contends the good faith exception is inapplicable because there is no evidence that Deputy Dalisay actually relied on *Diaz.* He reasons that Deputy Dalisay "must have actually known of the precedent and subjectively relied on it" and that it is not enough "simply that the precedent was on the books." We disagree. The United States Supreme Court has clarified that, in applying the good faith exception, "[t]he pertinent analysis of deterrence and culpability is objective, not an 'inquiry into the subjective awareness of arresting officers . . . .' " (*Herring v. United States, supra,* 555 U.S. at p. 145.) The " 'good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal' in light of 'all of the circumstances.' " (*Ibid.*) Objective reasonableness turns on "the state of the law at the time of the investigation in question." (*United States v. Lopez* (D.Del. 2013) 951 F.Supp.2d 657, 669.) Consequently, Deputy's Dalisay's subjective understanding of the law is irrelevant.

Petitioner also argues that the good faith exception is inapplicable here because Deputy's Dalisay's actions, taken as a whole, were culpable. He contends that evidence exclusion is appropriate when the "police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights . . . ." (*Davis, supra,* 131 S.Ct. at p. 2438.) According to petitioner, because the deputies illegally handcuffed him and illegally searched his home without a warrant, they should not be rewarded by allowing

16

the evidence seized from the cell phone to be admitted under the good faith exception to the exclusionary rule.

We are not persuaded that purportedly reckless law enforcement behavior unrelated to the challenged search bears upon the applicability of the good faith exception. The allegedly culpable conduct that petitioner cites occurred independently of the cell phone search. The cell phone search itself was performed in strict compliance with *Diaz*. Petitioner fails to cite any authority for the proposition that the good faith exception to the exclusionary rule is inapplicable to a search that is conducted in objectively reasonable reliance on existing law simply because another, separate search or seizure runs afoul of the Fourth Amendment. Moreover, in urging that we reject application of the good faith exception on the ground that the law enforcement officers in this case acted in a culpable and reckless manner, petitioner is essentially asking this court to reject the trial court's implied finding that the deputies' actions were reasonable under the circumstances.

As a further argument for rejecting application of the good faith exception, petitioner contends that *Diaz* did not authorize the search of a cell phone's contents in a case such as this one, when an arrest is made for driving on a suspended license. Petitioner relies on the United States Supreme Court's decision in *Gant, supra,* 556 U.S. at page 335, in which the court held that officers may not search a vehicle incident to an arrest unless "it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." *Gant* was decided two years before our Supreme Court decided *Diaz*. Petitioner interprets *Gant* broadly to suggest that officers cannot search an object incident to an arrest unless it is reasonable to believe the object or its contents would contain some evidence of the offense for which the person is arrested. Here, notwithstanding the fact that *Diaz* was the controlling precedent in California at the time, petitioner argues that the cell phone search was unlawful under *Gant* because there was no reason to believe that his cell phone contained any evidence bearing upon his arrest for driving with a suspended license. Petitioner goes so far as to claim that the majority in *Diaz* "made no mention of the then relatively recent *Gant* decision because it had no

17

occasion to determine whether the warrantless search of the digital contents of a cell phone was permissible if the arrestee's offense was a mere traffic violation where no 'offense-related evidence' could reasonably be expected to be found on the phone." Petitioner is mistaken as to the scope of *Gant* and is simply wrong concerning whether the *Diaz* court mentioned *Gant* and took its holding into consideration.

*Gant* is limited to the circumstance of the search of a vehicle incident to an arrest. (*Gant, supra,* 556 U.S. at p. 343; see *United States v. Wurie* (1st Cir. 2013) 728 F.3d 1, 7, fn. 6 [rule in *Gant* limited to vehicle context].) The decision does not apply to the search of the arrestee's *person* incident to arrest. Our Supreme Court expressly acknowledged this distinction in *Diaz*, in which the court stated the rule in *Gant* and then observed, "*Gant* is not otherwise relevant here, as it involved a search of the area within an arrestee's immediate control [e.g., a vehicle], not of the arrestee's person." (*Diaz, supra,* 51 Cal.4th at p. 96, fn. 9.)

In this case, as in *Diaz,* the search incident to arrest involved a search of the arrestee's person. The cell phone at issue here was found in petitioner's pocket. The trial court was careful to distinguish between the cell phone found in petitioner's vehicle— which was not searched—and the cell phone found in petitioner's pocket. The trial court observed that, under *Gant,* the cell phone found in the vehicle could not be searched without a warrant, but that under *Diaz* the cell phone recovered from petitioner's person was subject to search, without regard to whether the deputy reasonably believed that it contained evidence related to the offense for which petitioner was arrested. The distinction made by the trial court was consistent with the state of the law at the time. Under *Diaz,* the search of the cell phone recovered from petitioner's pocket was lawful.

We conclude that application of the good faith exception to the exclusionary rule precludes suppression of the evidence recovered from petitioner's cell phone. The Court of Appeal for the Second District, Division Five, reached a similar conclusion in *People v. Macabeo* (2014) 229 Cal.App.4th 486, in which the court held that *Riley* has retroactive application but also concluded that the good faith exception to the

18

exclusionary rule applied to a cell phone search conducted in reliance on *Diaz*.[4] (*Id.* at pp. 494–495.) The *Macabeo* court rejected the contention that *Diaz* limited the search of a cell phone found on an arrestee's person to evidence of the crime for which the arrest was made. (*Id.* at p. 496.) The court also held that an officer's reliance on existing case law can be presumed, and it rebuffed the suggestion that a prosecutor must present evidence that an officer actually relied on a particular appellate decision. (*Id.* at p. 497.)

**5.** ***Warrantless "Protective Sweep" of Residence***

Petitioner contends that the warrantless search of his home was unlawful. He argues there was no legal basis to conduct a "protective sweep" of the residence before securing a search warrant, and he disputes whether there were any exigent circumstances justifying a warrantless search to prevent the destruction of evidence.

We have serious concerns about the propriety of the warrantless search of the residence. We are aware of no legal authority that would permit a protective sweep incident to an arrest at a location far removed from where the arrest is actually made. Further, despite the claim that an exigent circumstances search was justified by the fear that evidence might be destroyed, no attempt was made to seize evidence that might actually be destroyed before a warrant could be obtained. As we explain, notwithstanding our concerns about the warrantless search, we need not reach the issue of whether the protective sweep was lawful because the subsequent search of the residence pursuant to a warrant was valid even without considering evidence recovered during the warrantless search.

"It has long been established that even if a criminal investigation involved some illegal conduct, courts will admit evidence derived from an 'independent source.' " (*People v. Weiss* (1999) 20 Cal.4th 1073, 1077.) " 'The independent source doctrine allows admission of evidence that has been discovered by means wholly independent of any constitutional violation. . . .' " (*Ibid.*) "If, after some illegal conduct, the police obtain a search warrant they would have sought without that conduct, and none of the

---

[4]The published decision in *People v. Macabeo, supra,* 229 Cal.App.4th 486, was filed September 3, 2014, and is not yet final as of the filing of this opinion.

supporting documents cites information derived from that conduct, application of the doctrine is relatively easy: The court need not suppress evidence found in the resulting search." (*Id.* at p. 1078.) Where, as here, "the affidavit supporting a search warrant contains both information obtained by unlawful conduct as well as untainted information, a two prong-test applies to justify application of the independent source doctrine." (*People v. Robinson* (2012) 208 Cal.App.4th 232, 241.) "First, the affidavit, *excised of any illegally-obtained information,* must be sufficient to establish probable cause. [Citation.] Second, the evidence must support a finding that 'the police subjectively would have sought the warrant even without the illegal conduct.' " (*Ibid.*)

Here, the affidavit supporting the search warrant described the circumstances of petitioner's arrest and the evidence recovered from the vehicle and petitioner's cell phone. It also mentioned the warrantless sweep, which the affidavit described as a "freeze . . . pending a search warrant." The affidavit described the interior layout of the home and the discovery of the handgun on the bed in petitioner's room.

If the affidavit supporting the search warrant is excised of any mention of the warrantless entry—which yielded evidence of a handgun found in petitioner's room—the affidavit still establishes probable cause for the issuance of a search warrant. As described above, petitioner was arrested in possession of numerous indicia of drug trafficking—most notably, separately packaged marijuana, a large amount of cash, and cell phone messages suggesting a recent sale. The facts that petitioner was arrested with such a large amount of currency and that his car had a very strong odor of marijuana supported the inference that additional evidence of drug trafficking existed and would likely be found at his residence. Deputy Dalisay testified that it was his experience that further evidence of drug sales could be found at a suspected drug trafficker's residence. Thus, even without mention of the protective sweep and the handgun, the affidavit adequately provided probable cause to search the home. (See *People v. Cleland* (1990) 225 Cal.App.3d 388, 392–393 [seizure of baggies of marijuana packaged for sale from defendant's person plus officer's opinion that additional contraband would likely be found at defendant's residence justified warrant for search of residence].)

20

Further, the evidence supports the conclusion that the police would have sought the search warrant even without the warrantless entry.  The affidavit itself describes the sweep as a "freeze" designed to isolate and contain the premises while the officers obtained a search warrant.  Moreover, Deputy Dalisay testified that officers intended to conduct the sweep only after petitioner's mother refused consent to search, and only to secure the scene until a search warrant issued.

Petitioner argues that the warrant was not supported by probable cause because there was nothing to connect petitioner's residence to drug sales.  We disagree.  In the case of persons suspected of being drug dealers, California case law supports the notion that additional evidence is likely to be found where the dealer lives.  (See *People v. Pressey* (2002) 102 Cal.App.4th 1178, 1184.)  Petitioner relies on *Pressey,* which declined to extend this principle to *users* of illegal drugs.  (*Id.* at p. 1190.)  In *Pressey,* the court held that "probable cause to search the residence of someone suspected of *using* illegal drugs requires more than an opinion or inference, available in every case, that drugs are likely to be present." (*Ibid.*, italics added.)  The court distinguished cases involving drug *traffickers* from those involving persons simply suspected of being drug *users.*  (*Id.* at pp. 1188–1189.)

In this case, petitioner was suspected of being a drug trafficker, not just a user of drugs.  The text messages found on his phone suggested that petitioner had conducted a sale just the day before the search.  Under the circumstances, there was probable cause to believe that additional evidence of drug trafficking could be found at his residence.

Because the affidavit in support of the search warrant supplied probable cause for the search even without the evidence obtained from the warrantless sweep, we conclude that the search of the residence pursuant to the warrant was lawful.  There is no basis to suppress evidence obtained during that search.

As a final matter, we note that evidence of the handgun found in petitioner's room—which was originally discovered during the protective sweep—would have been found during the subsequent, lawful search conducted pursuant to a warrant.  Even if we were to conclude that the protective sweep was unlawful, evidence of the handgun is

admissible under the "inevitable discovery" doctrine because it would have been discovered through lawful means.  (See *People v. Hughston* (2008) 168 Cal.App.4th 1062, 1071–1072.)

## DISPOSITION

The petition is denied.  The stay previously issued by this court is dissolved.

22

_____
McGuiness, P.J.

We concur:


_____
Siggins, J.


_____
Jenkins, J.